**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**JEANETTA SMITH , A/K/A JEANETTE SMITH**                    **PLAINTIFF /**
                                                             **COUNTER-DEFENDANT**

**VERSUS**                                        **CAUSE NO:  1:15cv9 KS-RHW**

**UNION NATIONAL LIFE INSURANCE COMPANY; Et Al.**           **DEFENDANTS**

**And**

**UNION NATIONAL LIFE INSURANCE COMPANY**                    **DEFENDANT/**
                                                            **COUNTERCLAIMANT/**
                                                            **THIRD PARTY PLAINTIFF**

**VERSUS**

**SANDRA CARTER, MARSHALL FUNERAL HOME, INC.**
**AND C&J FINANCIAL, LLC**                       **THIRD PARTY DEFENDANTS**

**And**

**MARSHALL FUNERAL HOME, INC.**                          **COUNTERCLAIMANT**

**VERSUS**

**UNION NATIONAL INSURANCE COMPANY**               **COUNTERDEFENDANT**

**PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**THIRD AMENDED COMPLAINT AND SUBSTITUTE JOHN DOE "E" DEFENDANT**

        Plaintiff files this Motion for Leave to File the Third Amended Complaint that is attached

as "Exhibit 1", as follows:

**Introduction / Facts**

   1.  Plaintiff seeks to amend her Complaint to substitute and add claims against United

Insurance Company of America (hereinafter "UIAC").

   2.  Although the deadline imposed by the Court's [76] Case Management Order for filing

motions to amend pleadings was June 30, 2016, Plaintiff could not have discovered, and did not

discover the facts on which this Motion is premised until after that deadline had come and gone. Plaintiff served written discovery requests on the first day she was allowed to – the day the Court's [76] Case Management Order was entered.  Defendants served responses to Plaintiff's discovery requests on July 19, 2016, pursuant to an extension granted by the Court.

3.   The Court is well aware by now that this case revolves in significant part around what documents were in the insurance company's files related to the subject insurance policy(s), and when and how the insurance company discovered and/or should have discovered those files.  Even though it received notice of Plaintiff's claim on or about June 1, 2014, Union National claims it did not discover records in its own files confirming that Plaintiff had been named Daisy Carter's beneficiary (in 1996) until "January, 2016".  Additionally, Union National still has not provided originals and/or copies of the Policy Endorsement changing the beneficiary to the Plaintiff and/or the Certification that Plaintiff is the beneficiary that was signed by Union National's President from its own policy files.  Where those documents were and are, and when / how Defendants should have discovered them through a reasonable investigation are issues that must be decided in this case.

4.   Documents served with Union National's discovery responses, which were not received by the Plaintiff until they were delivered by U.S. Mail on July 22, 2016 (less than 2 weeks prior to the date of this Motion), include a document titled "Insurance Administration Agreement" (attached as "Exhibit 2") and another document titled "Coinsurance Agreement" (attached as "Exhibit 3").  Both of those documents are agreements by and between Defendant Union National Life Insurance Company ("Union National") and Union Insurance Company of America ( "UICA"), the party Plaintiff seeks to substitute as "John Doe E".

5.   The "Insurance Administration Agreement", which is dated August 1, 2007, applies to Union National's "entire block of Life …. Insurance business, including all existing business and

all future business." (See Ex. 2, pg. 2, §2.1)  The Agreement requires, in part:

> UICA shall print all policies and related forms as may be authorized from time to time by [Union National], and **shall safeguard and account for all such policies and other forms at all times**. …
> …
> UICA shall administer and service all of [Union National's] business after issuance, including but not limited to: … processing and issuing policy endorsements or changes; and processing policy loans and surrenders.
> …
> UICA shall provide the data processing support necessary for the timely servicing of [Union National's] business …
> …
> UICA **shall** defend, **adjust,** settle **and pay all new and existing claims under [Union National] policies**.

(Ex. 2, §§ 2.2(b), (d), (f) and (h)) (emphasis added).

6.  The "Coinsurance Agreement", which is dated effective May 1, 2009, provides and/or

requires in part:

> [Union National] desires to cede its risk under all of its past, existing and future life … business to [UIAC] on a one hundred percent (100%) coinsurance basis …
> …
> … [UIAC] agrees to be responsible for one hundred percent (100%) of the Statutory Reserves and Liabilities applicable to the Policies, and shall be fully responsible, at its sole expense, for administration of the Policies in all respects in the name, and on behalf, of [Union National] …
> …
> [UIAC] is authorized to collect premiums and policy loans directly from Policyholders and to deposit such premium funds in one or more of [UIAC's or Union National's] depository bank accounts.  [Union National and UIAC] agree to maintain accounting and operational records and books in adequate detail so as to identify the specific Policies and Policyholders of the Company with respect to which such funds are deposited in a bank account. …
>
> … All records pertaining to the Policies, including benefits arising under the Policies, shall be deemed to be jointly owned records of [Union National and UIAC] …
> …
> … [UIAC] … shall be responsible for the administration of all aspects of the Policies … including but not limited to … paying all claims arising under the Policies …
> …
> [UIAC agrees] … it will have statutory capital and surplus (consisting of cash and securities …) of not less than the amount necessary to comply with the law of all applicable jurisdictions regarding minimum capital and surplus of an insurance company writing the Policies.
> …

3

> [Union National] shall refer to [UIAC] all inquiries involving the Policies, including, without limitation, inquiries regarding … claims payment …. Claims under the Policies submitted to [Union National] will be forwarded to [UIAC] as promptly as practicable.
> …
> [UIAC] shall assume the defense of [Union National] in any actions arising out of producing, underwriting, servicing, collecting or performing any other function concerning the Policies, in any actions arising out of defending, settling or paying claims arising under the Policies, and …
> …
> [UIAC] shall … appoint claims, defense and loss control attorneys.
> …
> [UIAC] agrees to … print all policies and related forms as may be authorized from time to time by [Union National].
> ...
> [UIAC] agrees to … keep all necessary records to account for transactions related to the Policies …
>
> [UIAC] agrees to …provide all data processing and accounting services as necessary to service the Policies.

(See Ex. 3, Introduction and §§ 2.12, 3.1.3, 3.2, 4.1.1, 5.2, 6.1, and incorporated Service Schedule 4.1, subparts C(2), D(5), D(9),and D(10)).

7.   This newly discovered evidence, which was not and could not reasonably have been known to the Plaintiff prior to the deadline for amending claims set by the Court's [76] Case Management Order, reveals that UIAC may be the actual keeper of documents and information related to the subject policies, and is the actual adjuster for the subject claim, the entity who made the decisions to repeatedly deny the Plaintiff's claim, and/or the entity who is directing and/or controlling the post litigation conduct of Union National and/or the other Defendants.  Under Mississippi law, "an insurance adjuster … or other similar entity … may be held independently liable for its work on a claim if … its acts amount to any one of the following familiar types of conduct: gross negligence, malice, or reckless disregard for the rights of the insured." *Gallagher Bassett Servs. v. Jeffcoat*, 887 So. 2d 777 (Miss. 2004).

8.   Plaintiff's First Amended Complaint alleges, in part:

> Defendants, John and Jane Does A-F, are individuals and/or entities, which may include agents and representatives of Union National, Kemper Home Services Companies, and/or

4

other companies with the Kemper Corporation, that were involved in selling and/or servicing the subject policies of insurance at issue, involved in accepting requests for and implementing policy changes on the subject policies of insurance, **involved in the adjusting Mrs. Smith's claim that gave rise to this litigation and/or were responsible for any of the decisions made with regard to the handling of this claim, whose conduct subjects them to individual liability under applicable law**.  During or after discovery, Mrs. Smith will amend her Complaint to properly identify John and Jane Doe Defendants A-F once their true identities and liability are learned.  All allegations herein against Union National and Kemper are incorporated, by reference, against John and Jane Doe Defendants A – F.

(Doc [3], ¶ 4) (emphasis added).  Plaintiff is seeking to amend her Complaint to substitute UIAC for John Doe Defendant E, and to assert claims for gross negligence, malice, or reckless disregard for the rights of the insured against that UIAC premised upon the facts newly discovered by the Plaintiff.

9.   Currently pending before the Court is Plaintiff's Motion for Leave to File Second Amended Complaint and Substitute John Doe F Defendant.  (Doc [78]).  That motion has been fully briefed, and is awaiting ruling by the Court.  The proposed Third Amended Complaint attached hereto as "Exhibit 1" includes the allegations and claims against Kemper Corporate Services Inc. that are set forth in the proposed Second Amended Complaint.

10.   This Motion is being filed within a reasonable time (less than two weeks) after Plaintiff was able to discover, for the first time, evidence and information from which the identity and liability of John Doe E Defendant (UIAC) could be determined.  Plaintiff will need to conduct written discovery and depositions to fully uncover the role and liability of this newly introduced party, who is being substituted for John Doe Defendant "E" in the proposed, attached Third Amended Complaint.

11. Although all of Plaintiff's new allegations and claims against UIAC relate to the subject matter of the pending litigation, Plaintiff did not have sufficient information to articulate these facts or claims at the time she filed her First Amended Complaint.

**Law and Analysis**

12.  Rule 15(a)(2) controls the timing and process for amendments after a party files a responsive pleading.  Fed.R.Civ.P. 15(a)(2).  The rules states that "a party may amend its pleading only with the opposing party's written consent or the Court's leave.  The Court should freely give leave when justice so requires." *Id.*  "The decision to grant or deny a motion to amend pleadings is entrusted to the sound discretion of the district court."  *Norman vs. Apache Corp*., 19 F.3d 1017, 1021 (5th Cir. 1994) (citing *Avatar Exploration, Inc. vs. Chevron, U.S.A.*, 933 F.2d 314, 320 ()5th Cir. 1991)).

13.  The United States Supreme Court has held "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing Fed.R.Civ.P. 15).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.*, *Fuhrer v. Fuhrer*, 292 F.2d 140, 143 (7th Cir. 1961) ("Federal Rules respecting amendments to pleadings should be given a liberal construction so that cases are decided on the merits rather than on bare pleadings.")  Under Fed.R.Civ.P. 15, amendments to pleadings are liberally permitted.  *Brandon v. Holt*, 469 U.S. 464 (amendment to pleadings permitted even on appeal to Supreme Court); *Dussouy v. Gulf Coast Inv. Corp*., 660 F.2d 594 (5ht Cir. 1981 (courts should not deny leave to amend unless a showing of both prejudice and substantial reasons for denial exist).

14.  Plaintiff's motion for leave to amend seeks a determination, on their merits, of proper claims for relief.

15. Allowing Plaintiff to file her Second Amended Complaint will substantially advance this litigation and permit the Court to consider the merits of the case.

16. Accordingly, Plaintiff respectfully requests leave to amend her Complaint, as set forth in

the proposed Third Amended Complaint attached as "Exhibit 1".

17. Plaintiff respectfully submits this motion is filed in good faith and in attempt to permit this Court to timely resolve all claims on their merits.

18. The other parties will not be prejudiced by the filing of this Motion or the proposed Third Amended Complaint.  Plaintiff's motion is filed as soon as possible, and within a reasonable time from discovery of previously unavailable evidence; and discovery is in early stages. Although it was produced to Counsel for Plaintiff on July 22, 2016, due to a busy litigation schedule, undersigned Counsel for Plaintiff was not able to read the newly discovered evidence discussed above and attached hereto until August 3, 2016.

19. Additionally, the Court has not yet ruled on Plaintiff's pending [78] Motion for Leave to File Second Amended Complaint.  The Court could thus allow both new parties, Kemper Corporate Services and UIAC, to be introduced into the litigation on the same date.

20. Even if the Court and/or parties deem a continuance would be required were UIAC introduced into the litigation at this date, the interests of justice would be promoted by allowing Plaintiff to have all her claims, against all allegedly liable parties, heard on their merits.

21. As the nature of this Motion is clear on its face, Plaintiff respectfully requests she not be required to file a separate memorandum.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests leave of this Honorable Court to file her Third Amended Complaint, which is attached as "Exhibit 1", together with any and all additional relief, in favor of the Plaintiff deemed appropriate by this Honorable Court.

Respectfully submitted, this the 3rd day of August, 2016.

Jeanetta Smith a/k/a Jeanette Smith,
Plaintiff / Counter-Defendant

By:   */s/ Christopher C. Van Cleave*

7

CHRISTOPHER C. VAN CLEAVE (MSB#10796)

ATTORNEYS FOR THE PLAINTIFF:
Clyde H. Gunn, III, Esquire
Christopher C. Van Cleave, Esquire
David N. Harris, Jr., Esquire
Corban, Gunn & Van Cleave
Post Office Box 1916
Biloxi, Mississippi 39533-1916
Phone: 228-432-7826  Fax:
228-456-0998
buddy@cgvclaw.com
christopher@cgvclaw.com
david@cgvclaw.com

## CERTIFICATE OF SERVICE

I, Christopher C. Van Cleave, do hereby certify that on this date I electronically filed with

the Clerk of Court through the ECF system, a true and correct copy of the above and same

forwarded via the ECF system to:

WILLIAM C. BRABEC (MSB NO. 4240) M.
SCOTT JONES (MSB NO. 102239)
**ADAMS AND REESE, LLP**
1018 Highland Colony Parkway, Suite 800
Ridgeland, Mississippi 39157
Telephone: (601) 353-3234
Facsimile: (601) 355-9708
E-Mail: bill.brabec@arlaw.com
E-Mail: scott.jones@arlaw.com

JOSEPH P. HUDSON
HUDSON & SMITH
Post Office Box 908
1600 24th Avenue, Suite A
Gulfport, Mississippi 39502-0908
(228) 863-3095
E-Mail:  jhu8633095@al.com

CHAD J. HAMMONS (MSB NO. 10419)
JONES WALKER LLP
190 East Capitol Street, Suite 800
Post Office Box 427
Jackson, Mississippi 39201-0427

8

Telephone: (601) 949-4900
Telecopier: (601) 949-4804
E-Mail:  chammons@joneswalker.com

This the 3rd day of August, 2016.

By:    */s/ Christopher C. Van Cleave*
CHRISTOPHER C. VAN CLEAVE (MSB#10796)