**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**JEANETTA SMITH, a/k/a JEANETTE**
**SMITH**                                                                    **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO. 1-15-CV-9-KS-RHW**

**UNION NATIONAL LIFE INSURANCE**
**COMPANY, et al.**                                                          **DEFENDANTS**

**AND**

**UNION NATIONAL LIFE INSURANCE CO.**                      **COUNTERCLAIMANT/**
                                                                    **THIRD-PARTY PLAINTIFF**

**v.**

**SANDRA CARTER, et al.**                                    **COUNTER-DEFENDANT/**
                                                           **THIRD-PARTY DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Union National's Motion to Strike Portions of Deposition and to Prohibit Use of Privileged Information [326]. After reviewing the submissions of the parties and the applicable law, the Court finds that this Motion is well taken and should be **granted**.

## I. BACKGROUND

This is a life insurance dispute. Plaintiff took a Rule 30(b)(6) deposition of Union National, where Judy Hecker acted as a corporate representative. Union National, in compliance with this Court's previous order compelling discovery, made ESI available to Plaintiff's Counsel, Christopher Van Cleave. The ESI was on a laptop brought by Ms. Hecker.

While the parties dispute what happened next, the following is clear: Union National's counsel William Brabec and Union National's in-house attorneys Scott Snider and Francesca

1

Robertson carried on a conversation while Mr. Van Cleave viewed documents on Ms. Hecker's laptop. Mr. Van Cleave directed Ms. Hecker where to click as she showed him documents in the software program. Mr. Van Cleave was positioned in between Ms. Hecker and Mr. Brabec.[1] Ms. Hecker asked Mr. Brabec if she was allowed to show Mr. Van Cleave the documents within and he said yes. In his review of the documents, Mr. Van Cleave saw emails that had not been previously produced, including at issue here, an email from Scott Snider to Union National employees regarding Plaintiff's Complaint and his opinion as to what Union National should do in response to it. Mr. Van Cleave asked Ms. Hecker to enlarge the email, which she did. She also agreed to print the email for him, but she never did. At no time did Mr. Van Cleave inform Union National's attorneys that he had seen documents involving Union National's attorneys. After a few minutes, Mr. Brabec walked around to the computer. He told Ms. Hecker not to show Mr. Van Cleave documents that involved attorneys and might be subject to a cliam of attorney client privilege. Ms. Hecker responded that she had already shown Mr. Van Cleave documents that fit that description. Mr. Brabec then claimed the attorney client privilege on behalf of Union National. The parties now dispute whether the email was privileged and, if so, whether that privilege has been waived.

## II. LAW & ANALYSIS

### A. Was the Email Protected by Attorney Client Privilege?

#### 1. In General

As this is a diversity action where state law supplies the rule of decision, Mississippi law determines the scope of the attorney client privilege. *Dunn v. State Farm Fire & Cas. Co.*, 927 F.3d 869, 875 (5th Cir. 1991) (citing Fed. R. Evid. 501). Mississippi Rule of Evidence 502(b)

---

[1] The parties dispute whether Mr. Van Cleave intentionally shielded Mr. Brabec's view on Ms. Hecker's computer screen.

states that a client may claim the privilege to prevent disclosure of "any confidential communication made to facilitate professional legal services to the client." For our purposes, the communication must be between the client/the client's representative and the client's lawyer, between the client's representatives, or between the client and a client representative. Miss. R. Evid. 502(b). "Client" is defined to include a corporation, and "a 'client's representative' may be a corporate employee who has 'authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or an employee of the client having information needed to enable the lawyer to render legal services to the client.'" *Baptist Health v. BancorpSouth, Ins. Servs., Inc.*, 270 F.R.D. 268, 274 (N.D. Miss. 2010) (quoting Miss. R. Evid. 502(a)(1)-(2)).

As for substance, the communications need not "contain purely legal analysis or advice to be privileged." *Hewes v. Langston*, 853 So. 2d 1237, 1244 (Miss. 2003) (quoting *Dunn*, 927 F.3d 869). The Mississippi Supreme Court has stated that it interprets the scope of this privilege "broadly":

> [T]he privilege relates to and covers all information regarding the client received by the attorney in his professional capacity and in the course of his representation of the client. Included are communications made by the client to the attorney and by the attorney to the client. In that sense it is a two-way street.

*Id.* (quoting *Barnes v. State*, 460 So. 2d 126, 131 (Miss. 1984)). This requirement extends to when a corporation has in-house counsel. In such cases, "the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions." *Baptist Health*, 270 F.R.D at 276. Therefore, the critical inquiry is whether the communication "facilitated the rendition of predominately legal advice or services to the client." *Id.*

Here, the communication at issue was between Scott Snider and Union National employees. Brabec Aff. ¶ 10, ECF No. 345. Snider acts as in-house counsel for Union National.

*Id.* Therefore, this was a communication between an attorney and client representatives. Since Snider is in-house counsel, the Court must specifically determine whether the communication was made in furtherance of legal advice or services—not business, technical, or management decisions. The email from Snider stated that Snider had reviewed the Complaint [3] and supporting documents, and then gave his opinion as to what Union National should do in response to the Complaint.

The Court finds that this falls within Mississippi's broadly construed attorney client privilege. The statements contain in-house counsel's legal opinion as to whether Plaintiff's claims had merit. They were made for the facilitation of providing legal services, and the communication does not implicate business, managerial, or technical decisions.[2]

### 2. Crime Fraud Exception

Plaintiff also argues that the crime fraud exception applies, and thus the email is not privileged. This exception provides that there is no privilege when a lawyer's services "were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." Miss. R. Evid. 502(d)(1).  The basis for Plaintiff's assertion is that the email proves that Union National was aware that Plaintiff was the correct beneficiary, and that despite this, Union National made contrary assertions in later documents filed with this Court. Union National asserts that it is uncontested that it was aware that Plaintiff was the correct beneficiary at the time the email was written as Plaintiff had provided the change of beneficiary form in December 2015 in discovery responses, and thus, it attempted to

---

[2] Plaintiff argues that the attorney client privilege does not apply because Snider was acting as an investigator/claims adjuster, not as counsel for Union National when he sent the email. Plaintiff characterizes the email as "not legal advice, but a factual recitation of the investigation of Plaintiff's claim and the result of that investigation." Pl.'s Am. Memo. Supp. Response Opposition Def.'s Mot. Strike Portions Dep. & Prohibit Use Privileged Information 13, ECF No. 347. Nothing in the email or in either party's briefs suggests that Snider investigated the underlying facts of Plaintiff's claim. Instead, based on Plaintiff's description of the email, Snider reviewed the Complaint and suggested a course of action for Union National to take, which constitutes legal advice.

pay Plaintiff's claim two weeks later. Even assuming that Union National's assertions in later pleadings are enough to show fraud, there is nothing in Snider's email suggesting that Union National attempted to use Snider's services to perpetrate such alleged fraud. This argument is without merit.

### B. Waiver of the Privilege

#### 1. Waiver by Disclosure

The most common way the privilege is waived occurs "when a client reveals otherwise privileged communications with his or her attorney to a third party." *Baptist Health*, 270 F.R.D. at 273. The privilege is preserved if the client is compelled to testify to the communications, but if he "voluntarily" speaks to such communications, the privilege may not be later asserted. *Id.* at 274.

An inadvertent disclosure of privileged communications may act as a waiver of the privilege. An inadvertent disclosure has been defined as "a situation in which the client does not intend that the confidentiality of the communication be breached, but third parties nevertheless gain knowledge of its contents." *Apex Mun. Fund v. N-Grp. Sec.*, 841 F. Supp. 1423, 1432 (S.D. Tex. 1993). Although it is a close call, the Court finds that the disclosure by Ms. Hecker was inadvertent, as the facts do not suggest that Union National intended that the confidentiality of the communication be breached. On one hand, Ms. Hecker, acting as an agent of Union National, voluntarily opened the email, showed it to Plaintiff's counsel, and enlarged it so that he could view it. On the other hand, Ms. Hecker, as a non-attorney, was acting at the direction of Plaintiff's counsel when she did so. She also appeared to believe that she was required to disclose such communications as a part of this Court's previous Order, and finally, she was acting under the direction of Union National's attorney, who directed her to show Plaintiff's counsel the electronically stored documents.  This leads to the inference that Union National and its attorneys

were not aware that privileged documents were stored in the software. The record shows that Ms. Hecker meant to show Plaintiff documents which were subject to discovery, not documents protected by the attorney client privilege.

The Case Management Order provides: "Pursuant to Rule 502(d)[3] of the Federal Rules of Evidence, the attorney-client privilege and the work-product protections are not waived by any disclosure connected within this litigation pending before the court." The CMO further provides that "[t]he parties expressly do not waive privileges that may exist in inadvertently produced ESI." Accordingly, Plaintiff's disclosure did not constitute a waiver, and the shield of attorney-client privilege remains in place.

In the alternative, the application of the Fifth Circuit's factors for inadvertent disclosure do not support a finding of waiver. As noted by a district court in the Northern District of Mississippi, "Mississippi state courts have not spoken to the issue of waiver of the attorney-client privilege by inadvertent disclosure," but the Fifth Circuit has, which Mississippi courts often use where state law is silent. *United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 489 (N.D. Miss. 2006). The Fifth Circuit has taken the modern approach, which holds that inadvertent disclosure waives the privilege only in some circumstances.

The non-exhaustive list of factors to consider when determining if an inadvertent disclosure results in a waiver of the privilege are as follows: "(1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Alldread v. City of Grenada*, 988 F.2d 1425, 1433 (5th Cir. 1993).

---

[3] Federal Rule of Evidence 502(d) provides: "A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court . . . ."

First, it appears that there were not many precautions taken to prevent disclosure. According to Plaintiff, the email was not placed in a separate folder, nor was it labeled privileged. Instead, it was intermixed with non-privileged documents. The second factor weighs in favor of Union National, as its attorney claimed the privilege on its behalf immediately upon discovering that Plaintiff's attorney had viewed the email. No party has submitted any arguments in their briefs as to whether discovery in this case was broad. Therefore, the Court finds this factor to be neutral. The extent of disclosure appears is minimal, as Plaintiff's counsel viewed the documents for only a few minutes. *United Investors Life Ins. Co.*, 233 F.R.D. at 491 (extensive and thorough review by opposing counsel weighs in favor of waiver, especially when documents are actually turned over).  As for the final factor, Plaintiff has not shown any substantial reliance on the documents in discovery. *See id.* Fairness requires that the inadvertently disclosed emails stay privileged.

        2. <u>Waiver by Other Means</u>

Plaintiff makes several other arguments to support her contention that Union National has waived the attorney client privilege: by asserting advice of counsel, by failure to place the email on its privilege log, and by failing to comply with the Court's orders. Plaintiff's "advice of counsel" is as follows: "While not *pleading* advice of counsel, Union National sought to hide behind Counsel to avoid allowing the Plaintiff to conduct the discovery of Union National's post litigation investigation . . . ." Pl.'s Am. Mem. Supp. Resp. Opp'n Def.'s [326] Mot. Strike Portions Dep. & Prohibit Use Privileged Information 8, ECF No. 348. Since Union National has not actually pled "advice of counsel" as a defense, Court finds that this argument is the same as Plaintiff's argument that Union National has failed to comply with the Court's discovery related orders. The argument

that Union National's failure to place the Snider email on its privilege log is also in a similar vein.[4] These arguments are better suited to Plaintiff's Motion to Compel and will be addressed there.

### III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that that Motion to Strike Portions of Deposition and to Prohibit Use of Privileged Information [326] is **granted**. Thus, lines 17 through 25 of page 309 of the deposition, lines 1 through 11 of page 310 are struck from the Deposition of Judy Hecker. To the extent technically possible, the corresponding portion of the video deposition must be destroyed as well. The following docket entries are struck: Plaintiff's Memorandum in Support of Motion to Compel Defendant to Produce Investigation Records [331], Exhibits 1 and 5 to Plaintiff's Response in Opposition re Motion to Strike Portions of Deposition [346-1], [346-5], Plaintiff's Memorandum in Support of Response in Opposition to Defendant's Motion to Strike Portions of Deposition [347], Plaintiff's Amended Memorandum in Support of Response in Opposition to Defendant's Motion to Strike Portions of Deposition [348], and Exhibit 1 to Plaintiff's Response in Opposition re Memorandum in Support of Motion to Strike Motion to Compel Defendant to Produce Investigation Records [352-1]. Exhibit 15 to Plaintiff's Motion to Compel Defendant to Produce Investigation Records [330-15] and Exhibit 2 to Plaintiff's Memorandum in Support of Motion to Compel [331-2] will remain sealed to preserve the record. Furthermore, Plaintiff and Plaintiff's counsel may not use any information protected by the attorney client privilege. Finally, Plaintiff must identify any other privileged documents that Plaintiff's counsel viewed in camera with a copy to Union National's counsel.

---

[4] The Court notes, though, that the majority of courts require a showing of bad faith before finding a waiver of privilege based on a deficient privilege log. *Cashman Equip. Corp. v. Rozel Op. Co.*, No. 08-363-C-M2, 2009 WL 2487984, at *2 n.4 (M.D. La. Aug. 11, 2009) (collecting cases).

SO ORDERED AND ADJUDGED, on this, the 11th day of December, 2017.

*/s/ Keith Starrett*
KEITH STARRETT
UNITED STATES DISTRICT JUDGE