**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **JEANETTA SMITH, a/k/a JEANETTE SMITH** | **PLAINTIFF** |
| **v.** | **CIVIL ACTION NO. 1-15-CV-9-KS-RHW** |
| **UNION NATIONAL LIFE INSURANCE COMPANY, et al.** | **DEFENDANT** |
| **AND** | |
| **UNION NATIONAL LIFE INSURANCE CO.** | **COUNTERCLAIMANT/ THIRD-PARTY PLAINTIFF** |
| **v.** | |
| **SANDRA CARTER** | **COUNTER-DEFENDANT/ THIRD-PARTY DEFENDANT** |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Union National's Motion for Summary Judgment [357], Plaintiff's Motion to Strike Union National's Motion in Support of Summary Judgment [378], and Plaintiff's Motion for Partial Summary Judgment [364]. After reviewing the applicable law and submissions of the parties, the court finds as follows:

- Plaintiff's Motion to Strike [378] is **granted in part** and **denied in part**:

  - Hecker's references to there being a paper/hard copy waiver of premium file in Paragraphs 10, 11, and 15 of her Declaration are struck, as they are blatantly contradicted by Union National's previous discovery responses.

  - Randall's attempts to offer evidence of correspondence between Mr. Brabec and Mr. Vancleave and the reason for the delay in issuing the second check are struck for lack of personal knowledge. Randall's statements as to what the proper interest rate under the Policy and Mississippi law is are also struck.

- o Plaintiff's motion as to Exhibit E of Union National's Motion for Summary Judgment is **moot** in light of the Court's previous Order [413].

- o The remainder of Plaintiff's motion is **denied**.

- Union National's Motion for Summary Judgement [357] is **granted in part** and **denied in part**.

- Smith's Motion for Partial Summary Judgment [364] is **granted in part** and **denied in part**.

## I. BACKGROUND

This is a life insurance dispute over a $10,000 policy ("the Policy"). In 1994, Daisy Carter took out a life insurance policy with Union National. She initially named her daughter, Sandra Carter as the beneficiary. In 1996, she submitted a Change of Beneficiary Form naming Plaintiff, her neighbor, as the beneficiary. In 2004, Union National switched its policy administration system, where all documents were stored on microfilm and indexed in the C.A.R. Indexing System.

Daisy Carter died on May 31, 2014. The next day, C&J Financial submitted a request for Union National to verify benefits under Carter's life insurance policy to pay for her funeral at Marshall Funeral Home. Union National checked its C.A.R. Indexing System, which only showed the original application, and advised that Sandra Carter was the beneficiary. Shortly after, Gina Marshall, an employee of Marshall Funeral Home, sent Dawn Key, a Union National employee in the benefits verification department, a scanned copy of the Change of Beneficiary form showing that Plaintiff was the beneficiary. Key informed Marshall that the documents needed to be sent to the Claims Department, as she did not have the authority to resolve beneficiary disputes. Marshall then called Union National's call center and explained that she had copies of the Change of Beneficiary form. None of those employees told her to send the form to them. The Claims

Department never received the documents. The Policy benefits were paid to Sandra Carter, who then assigned them to the funeral home. Daisy Carter's funeral was held without delay.

On July 19, 2014, Plaintiff wrote Ed Konar, president of Union National, a letter asserting that she was the beneficiary of the Policy. She asked what she needed to do to receive the proceeds. She included Carter's death certificate, but not the Change of Beneficiary Form. Michelle Randall, an employee in the Claims Department, did a second investigation into the documents listed on the C.A.R. Indexing System, and advised Mr. Konar's assistant that Sandra Carter was the beneficiary. Konar responded as such and stated that if Plaintiff had any questions to please contact him.

On January 13, 2015, Plaintiff filed suit alleging that Union National breached its contract with its insured, Daisy Carter. She has further alleged that Union National wrongfully denied her the proceeds of this Policy in bad faith. Two weeks later, the attorneys for Union National and Plaintiff exchanged emails where Plaintiff's counsel acknowledged that he had proof that Plaintiff was the correct beneficiary, but that he would not send the document to defense counsel unless either (1) Union National sent him certified copies of all of its paper files or (2) defense counsel personally affirmed that he had reviewed all of Union National's hard copy policy files and found no proof that Plaintiff was the beneficiary. Plaintiff's counsel cited Union National's duty to investigate its own files and asserted that Union National could not delegate that duty to the insured in support of his offer to exchange documents. Union National's attorney declined, stating they would wait for Plaintiff's initial disclosures.

On February 4, 2015, a paralegal found the Change of Beneficiary form in Daisy Carter's waiver of premium file. On April 30, 2015, Plaintiff attached the Change of Beneficiary form in response to Kemper Corporation's Motion for Summary Judgment. Plaintiff produced the

document in her initial disclosures on December 4, 2015. On January 13, 2016, Union National found the Change of Beneficiary form in its microfilm. On February 4, 2016, it sent Plaintiff a check for $10,398.96, representing the policy limits, plus 8% interest, minus a loan Daisy Carter had taken out against the Policy. Plaintiff's counsel rejected the tender as it was not unconditional, did not include attorney's fees, and did not show how interest was calculated. On June 29, 2016, Union National delivered another check that was then accepted.

Both parties have filed motions for summary judgment. Plaintiff has also filed a Motion to Strike (1) the three affidavits of Union National employees that it attached to its Motion for Summary Judgment because they are "sham affidavits," (2) evidence she argues should be excluded for untimely disclosure under Federal Rule of Civil Procedure 26, and (3) parole evidence.

## II. MOTION TO STRIKE [378]

The Sham Affidavit Rule holds that "a plaintiff[1] may not manufacture a genuine issue of material fact [in defending a motion for summary judgment] by submitting an affidavit that impeaches prior testimony without explanation." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984). Nevertheless, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc.*, 72 F.3d at 496. Furthermore, the Court "cannot disregard a party's affidavit merely

---

[1] All of the Fifth Circuit cases cited by the parties hold that the Sham Affidavit Rule applies to the *non-moving party* opposing a motion for summary judgment. Plaintiff is arguing that the Sham Affidavit Rule applies to the moving party, Union National. Pl.'s Mem. Supp. Mot. Strike 2, ECF No. 379 (citing *Adusumilli v. City of Chicago*, 164 F3d 353, 360 (7th Cir. 1998)). Union National did not contest whether this rule applies and the Court has not found a case which holds that it does not, so the Court will assume that it applies with equal force to both parties.

because it conflicts to some degree with an earlier deposition." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). In such cases, there is merely an issue of credibility, which must be resolved by the jury. *Id.* at 893, 894. In contrast, when an affidavit attempts to create a sham issue, to the point that the court may brand it as "bogus," the Court may disregard such sham affidavit. *Id.* at 894.

### A.     Declaration of Judy Hecker

#### i.     <u>Paragraph 7</u>

Plaintiff first takes issue with Paragraph 7 of Hecker's Declaration. The Declaration states:

> As to the Policy here, Union National stored on its microfilm rolls the original Application for Insurance and the Request for Policy Change, evidencing the change of beneficiary from Sandra Carter to Plaintiff. (*See* Application for Insurance and Request for Policy Change, attached hereto as Exhibits '1' and '2,' respectively.).

Declaration of Judy Hecker ¶ 7, ECF No. 375-1. Exhibit 2 to Hecker's Declaration, the Request for Policy Change, is a document Bates stamped UNLIC 1364. Plaintiff points out that that in one of its interrogatory responses, Union National identified UNLIC 45 as the Change of Beneficiary form found on the microfilm. Union National Life Ins. Co.'s Third Supp. Resp. Pl.'s First Set of Interrog. 23-13, 5, 30-31, ECF No. 378-4.[2]

It is worth noting that these documents are copies of the same form, meaning the substance of each of these documents is the same. Plaintiff argues that the distinction between these two documents matters because UNLIC 45 was produced with Defendant's December 9, 2015 Disclosures [378-5] with a paper flag on it. Plaintiff further points out that the disclosure happened before Union National says that it found the document on microfilm, on January 13, 2016. Hecker

---

[2] Plaintiff quotes Union National's response to interrogatories: "Union National was able to navigate through the microfilm containing hundreds or records of unrelated policies and locate a screen shot identifying Plaintiff as beneficiary (UNLIC_000044) and the request for policy change (UNLIC_000045)."

Decl. ¶ 19, ECF No. 375-1. In response, Union National submits that UNLIC 45 is a copy of the form found in a waiver of premium file,[3] while UNLIC 1364 is the copy of the document on microfilm. Union National's interrogatory response that Plaintiff claims Hecker's Declaration contradicts even says UNLIC_000044 and UNLIC 45 "were stored in hard copy in Plaintiff's waiver-of-premium file." Union National Life Ins. Co.'s Third Supp. Resp. Pl.'s First Set of Interrog. 3, ECF No. 378-4.

The Court finds there is not sufficient contradiction between Union National's interrogatory response and Hecker's Declaration to warrant calling it a "sham." It appears that in the interrogatory response, Union National is using UNLIC 45 to refer to the Change of Beneficiary Form in general. While the response could have been clearer as to the exact document it was referring to, this is not enough to strike to this portion of the affidavit.

  ii.  <u>Paragraph 8</u>

Paragraph 8 reads: "So, without having the Request for Policy Change properly indexed, Union National was unable to locate this document in the archives." Hecker Decl. ¶ 8, ECF No. 375-1. Plaintiff argues that this is "totally contrary" to Defendant's deposition testimony by Hecker as a Rule 30(b)(6) designee. Pl.'s Mem. Supp. Mot. Strike 4, ECF No. 379.

In the deposition, Hecker first testified that in order to find an unindexed document on Union National's microfilm, "you would have to go through every single roll of Union National's microfilm, one by one—there's hundreds of thousands of those." Hecker Dep. 43:7-12, ECF No. 378-2. Hecker then testified that rolls are stored "by week and year" and that they are not stored

---

[3] While Hecker's declaration stated that it was a paper or hard copy of the document, Plaintiff has pointed out that Union National previously stated that it destroyed the original Waiver of Premium file after imaging it in its regular course of business. This is discussed infra, pages 8-9.

by policy number range. *Id.* at 44:1. Plaintiff's counsel then showed Hecker the outer cover of a box that contained a roll of microfilm that had a range of policy numbers listed on it.

> Q: So your testimony a moment ago that life policy changes were not stored by policy number and year is incorrect; isn't that true?
> A: Based on this, that is true.

*Id.* at 45:25-46:3. After this, Hecker again stated that without the index, one would need "the date, the year, and the week" that the change was made to find the document on the microfilm. *Id.* at 46:10-13. After Plaintiff's counsel pointed out that one would only need to search the rolls for the years 1994 (the year the policy was issued) through 2014 (the year Daisy Carter died), Plaintiff's counsel asked:

> Q: However many [rolls of film] it is, whether it's hundreds of thousands, like you testified, or tens of thousands, Union National wouldn't have to go through every single roll to find the beneficiary change on a specific policy, would it?
> A: No.
> Q: All it would have to do was go through the rolls that are indexed for policy changes that have the range of policies that include Ms. Smith's policy; isn't that true?
> A: That could be done, yes.

*Id.* at 51:7-17.

Finally, Plaintiff's counsel informed Ms. Hecker that another employee, Stacy Huch was able to find the document on a microfilm viewer in less than ten (10) minutes. *Id.* 51:18-25. Plaintiff's counsel then stated that the roll was organized in sequential order by policy number.

> Q: Well, the policies—the information on the roll, as she reviewed it, was in policy number order. So the only thing she had to do to find Ms. Smith's policy number was advance the roll, look at the policy number, until she got to the policy number, right? It would be just like finding a number between 1 and 1,000. If you knew the number was 662, all you would have to do is find 500 and 700, and then close it in until you got to the right number, right?
> A: Correct.
> Q: That's an easy thing to do, right?
> A: Yes.

*Id.* at 52:6-18.

Hecker's testimony contains some inconsistencies. Nevertheless, it appears that she was confused by Plaintiff's counsel's questions and the cover of the microfilm roll. Further, she does state several times that one would need to know the week and year of a policy change in order to find a document that was not indexed on microfilm. Thus, any inconsistencies in Hecker's testimony existed from the date of the deposition, which suggests that the affidavit is not a sham.

Despite Plaintiff's assertions, Hecker does not clearly state that the document could be found "easily." She merely states that it would be "easy" to find a document with a number, if those documents were organized sequentially. Her statement in the affidavit that Union National would not be able to find a document that was not indexed is not flatly contradicted by her deposition testimony. It is not a sham.

Plaintiff then cites to several long excepts from Hecker's deposition, which may be summarized as follows: (1) Hecker conceded that Gina Marshall, an employee of Marshall Funeral Homes, sent Dawn Key, an employee of Union National, documents proving that Plaintiff was the beneficiary and that included the date of the beneficiary change on June 3, 2015; those documents and the email were never scanned into the Union National's system; and (2) a screenshot on the old policy administration system also listed Plaintiff as the correct beneficiary, but it did not include the date of the change; and logging into the old system and pulling up this document took Hecker about a minute. None of this directly contradicts Hecker's affidavit, which simply states: "So, without having the Request for Policy Change properly indexed, Union National was unable to locate this document in the archives." Hecker Decl.¶ 8, ECF No. 375-1. The Court agrees with Defendant that Plaintiff's arguments are overlapping with her substantive arguments in the motions for summary judgment. None of this is so contradictory as to require calling Hecker's affidavit a sham. These arguments are without merit.

In her affidavit, Hecker states, "A hard copy of the Request for Policy Change . . . was found in the course of this litigation in a Waiver of Premium claim file . . . , which is a separate paper file." Hecker Decl. ¶ 7, ECF No. 375-1. Paragraphs 11 and 15 also make references to there being a paper copy of the Request for Policy Change. Plaintiff points out that in several interrogatory responses, Defendant has testified that the paper copy of Daisy Carter's Waiver of Premium file was imaged to microfilm and then destroyed in the regular course of business in March 2014. Union Nat'l Life Ins. Co.'s Second Supp. Resps. Pl.'s First Set Interrog. 4, ECF No. 378-13. In another response to an interrogatory, Union National stated, "On or about February 4, 2015, [S. Joyce] Scales, a paralegal within Union National's legal department, was able to locate UNLIC 44 and 45 within Plaintiff's *imaged* waiver of premium file." Union Nat'l Life Ins. Co.'s Third Supp. Resp. Pl.'s First Set of Interrog. 14, ECF No. 378-4. In response to a request for production asking for all original/hard copies of documents comprising or relating to each claim file(s), Union National stated that it had produced such documents. It further stated: "Union National does not have the original documents. Union National imaged all such paper documents in the normal course of business." Union Nat's Life Ins. Co.'s Third Supp. Resps. Pl.'s First Set Req. Produc. Docs. 5-6, ECF No. 378-15.

In response Union National argues: "[T]here is no real inconsistency between the discovery responses and Hecker's declaration, and any perceived inconsistency is immaterial." Brief Opp. Pl.'s Mot. Strike 8, ECF No. 404. While Union National apparently does contest Plaintiff's argument that Hecker's statements are inconsistent with Union National's discovery responses, it failed to give any explanation so as to resolve these inconsistencies. Rather both of the parties' briefs focus on whether such facts are material to this case. As that is not an issue in this motion,

the Court will not determine whether the document was in a paper copy or imaged. For now, the Court will strike any references to the document being found in paper form. Plaintiff's motion is granted to the extent that the affidavit states that UNLIC 44 and 45 were found in a hard copy or paper copy.

Plaintiff also takes issue with Paragraph 11, which reads as follows:

> Accordingly, at the time of Daisy Carter's death, there were two documents in Union National's possession reflecting that Daisy Carter had changed the beneficiary under her Policy to Plaintiff: (1) the Request for Policy Change stored on the microfilm roll that was not located because it was not indexed in the C.A.R. Indexing System, and (2) a paper copy of the Request for Policy Change that was located in an old claim file in the Claims Department (i.e., the Waiver of Premium paper file in the Claims Department) where it would not be expected to be found.

Hecker Decl. ¶ 11, ECF No. 375-1. Plaintiff argues that this statement is "patently false" as the following were in Union National's possession:

- UNLIC 1362 [378-12]:  This is a screen shot from the "old policy administration system" that listed Jeanetta Smith as a beneficiary. Union National argues that this is not a "document."

- UNLIC 44 [378-10]: This is also a screen shot from the "old system." This shows the date of change and that Jeanetta Smith is a beneficiary. Union National also argues that this is not a document.

- UNLIC 62, 545, 542 [378-17]: Each of these documents say "see endorsement for beneficiary," but none of them contain the actual endorsement, nor do any specifically state that Plaintiff is the correct beneficiary.

- Documents provided by Gina Marshall [378-9]: These documents clearly show that Smith was the correct beneficiary. Plaintiff states that these were provided to Defendant on June 2-3, 2014. It is uncontested that this was *after* Daisy Carter's death.

- The waiver of premium file that was imaged into Union National's electronic files. Union National argues that "this file is one of the two files Hecker acknowledges existed at the time of Carter's death in her declaration." Brief Opp. Pl.'s Mot. Strike 11, ECF No. 404.

The Court finds that this is not so contradictory to warrant striking this portion of Hecker's affidavit. Plaintiff's motion is **denied** as to this issue.

        iv.       <u>Paragraph 14 and Paragraph 9</u>

Paragraph 14 of Hecker's declaration states: "The only source document that could be located regarding the policy was the application, reflecting that Sandra Carter was the beneficiary." Hecker Decl. ¶ 14, ECF No. 375-1. Hecker then states that "source documents" are the documents that are imaged on microfilm and indexed on the C.A.R. Indexing System. *Id.* ¶ 15. Plaintiff argues that Hecker testified that the documents listed above "could have easily been located with minimal investigation." The fact that other documents—that are not source documents—could have been found does not contradict the affidavit.

Plaintiff next takes issue with Hecker's statement that the Application for Insurance is a "source document." As just noted, the declaration refers to documents on the microfilm that were indexed on the C.A.R. Indexing System as "source documents." Plaintiff cites the following deposition testimony, during which Hecker is reviewing a print out of the C.A.R. Microfilm Index, [357-4], which shows relevant documents after a person inputs a policy number.

Q:      So this tells us that at Roll 5180 of Union National's microfilm, at Frame 1659, there is some information related to Policy 7020526342, correct?

A:      Yes. And we know it's return mail.

Q:      And we also know that at Roll 999, at Frame 99999, the entire file related to that policy is found, correct

A:      That's incorrect

Q:      Why?

A:      Because . . . there's no such roll and frame. [The date listed] was when records were requested a couple years ago, when we requested records. They started adding them to the C.A.R. index to let the clerical staff know

> that these records are in imaging. . . . The same thing for the original app[lication]. They're telling us that the original app[lication] was imaged in imaging on [September] 12, 2016. . . . The only thing that we had, physical, on a roll and frame that was indexed was returned mail.

Q: It's Union National's testimony that the only documents pertaining to Daisy Carter's life insurance policies that were indexed on—that were recorded on Union National's microfilm system was some returned mail dated April 30th, 2003?

A: That's the only thing that was indexed.

Q: Well, what do you mean by that?

A: The application, the original application is also on rolled film. Those were housed by policy number and issue year. They are not indexed on the C.A.R. retrieval system.

Hecker Dep. 34:5-35:17, ECF No. 378-2. In response, Union National submits that these statements are not contradictory. It is uncontested that policy applications were stored by year and policy number; therefore, those documents would not need to be indexed. Policy applications do, however, show up in the C.A.R. Indexing System when a person inputs the policy number. *See* CAR Indexing System [357-4].

Plaintiff argues that Hecker's statement that she has never known of another instance where a document stored on microfilm was not indexed in the C.A.R. Indexing System. Plaintiff submits that since policies were not indexed this statement is a sham. It is clear from the above deposition testimony that Hecker is referring to documents that change the policies, not policy applications. This argument is without merit.

     v.     <u>Paragraph 18</u>

Defendant argues that Hecker's testimony that Dawn Key "followed company procedures by referring Marshall to the claims Department and instructing her to submit the change for their consideration" contradicts her previous testimony "that Key's failure to image Marshall's email and policy documents into the system was a violation of Defendant's Claims Guiding Principles and Defendant's Policy Administration Guiding Principles." Plaintiff concedes that these

principles are dated October 2015, which is after Key received the emails. Further, Hecker testified that those policies were not in place when Marshall emailed Key. Hecker Dep. 157:15-158:3, 162:22-25, 163:1-9, ECF No. 378-2. Nevertheless, Plaintiff argues that Defendant was unable to demonstrate that the oral policies in place at that time were different from the written policies. As the movant, Plaintiff has the burden to show inconsistencies so blatant to warrant calling this affidavit a sham. It is not Union National's burden to prove otherwise. Plaintiff has not met her burden here.

vi.    Paragraph 19

Finally, Plaintiff takes issue with Hecker's statement that she and Stacy Huch were not able to locate the Change of Beneficiary Form on microfilm until January 13, 2016. Hecker Decl. ¶ 19, ECF No. 375-1. In an interrogatory response and several supplemental responses, Defendant stated that it first found the document on microfilm on January 13, 2015. Defendant submits that the statement as a whole makes clear that this is a scrivener's error:

> Judy Hecker or a subordinate working under her direction located the Change of Beneficiary form on January 13, 2015. The exact date of when the inspection began is not certain but could not have occurred until after Plaintiff produced her initial disclosures on December 4, 2015.

Union Nat'l Life Ins. Co.'s Third Supp. Resps. Pl.'s First Set Interrog. 27, ECF No. 364-32. Therefore, while there is a blatant inconsistency in Hecker's declaration and Union National's interrogatory response, that inconsistency existed from the moment that Union National filed its first supplemental response to Interrogatory 30. This suggests that the contradictory affidavit is not a sham merely attempting to avoid creating any genuine issue of material fact. The motion is **denied** in this respect.

**B.    Declaration of Michelle Randall**

i.    Paragraphs 6 and 7

Paragraphs 6 describes how Union National stores its documents on microfilm and the C.A.R. Indexing System. Paragraph 7 states that Daisy Carter's application was the only source document that showed up in the System. Plaintiff makes the same arguments as she made in support of striking Paragraph 14 and 9 of Hecker's Declaration. These statements are not so contradictory that they might be branded as bogus.

        ii.      <u>Paragraph 11</u>

Plaintiff requests that the Court strike Randall's statement that Plaintiff never submitted a formal claim. Plaintiff has asserted that she was not legally required to submit formal documents to make a claim. A determination of Plaintiff's legal duties is better suited for the ruling on the motions for summary judgment; therefore the Court declines to strike this paragraph based on such.

        iv.      <u>Paragraphs 13 and 17</u>

Randall's declaration states that in her July 19, 2014 letter, Plaintiff provided proof of her identity and Daisy Carter's death certificate, but she did not send any policy documents showing that she was the beneficiary. Randall Decl. ¶ 13, ECF No. 375-2. Plaintiff does not contest this. Plaintiff does, however, have an issue with Randall's statement in Paragraph 17, which reads, "Had Plaintiff submitted the Request for Policy Change itself, or any other documents indicating that she was the beneficiary, I could have verified her status as beneficiary and paid her at that time because, in hindsight, Union National made an honest mistake as to who was the beneficiary." *Id.* at ¶ 17. Plaintiff argues that this suggests that plaintiff had a duty to provide such documentation, which is contradicted by Randall's deposition testimony.

Randall's deposition testimony touches on an insurer's duty to investigate and request more information from a beneficiary making a claim. Such testimony does not directly contradict her

declaration. A determination of the duties' of the parties with respect to this case is better suited for the summary judgment analysis, *infra*.

v.      <u>Paragraph 15 and Paragraph 16</u>

Randall also states that "documents evidencing a change of beneficiary are not expected to be located in [the waiver of premium files]." Randall Decl. ¶ 15. Plaintiff first points out that in her deposition Randall testified the waiver of premium file was readily available for Defendant's inspection. Plaintiff then points out that Randall acknowledged a Union National policy that required an employee to pull the waiver of premium and put it in the "death claim" file and discard the file folder. The parties dispute whether this policy is applicable to the facts at hand.

Whether the policy applied does not matter for the purposes of the Motion to Strike. Even assuming there was a policy in place that required employees to pull such files, that does not contradict Randall's testimony that one would not expect to find a policy change form in said files. This argument is without merit.

Next, Plaintiff argues that "Randall's declaration falsely implies that Plaintiff never contacted Defendant with any questions or concerns." Pl.'s Mem. Supp. Mot. Strike 23, ECF No. 379. The Declaration does no such thing. It states Plaintiff wrote Defendant a letter on July 19. Randall Decl. ¶16. Defendant then responded and stated that its records showed Sandra Carter as the beneficiary and to contact Defendant if Ms. Smith had any further questions or concerns. *Id.* The declaration simply states: "But Plaintiff never contacted Union National again regarding the Policy until this lawsuit was filed." *Id.* Whether Defendant had a duty to request documents from Plaintiff or whether Plaintiff had a duty to provide such documents is not an issue for this motion. Thus Plaintiff's motion is **denied** as to Paragraphs 15 and 16.

vi.      <u>Paragraphs 18-20</u>

Plaintiff next argues that Randall does not have personal knowledge of post-litigation activities, therefore her affidavit should be stricken to the extent she attempts to offer testimony as to such. Paragraphs 18 through 20 state that in February 2015, Union National's counsel, William C. Brabec, wrote Plaintiff's counsel, Christopher Van Cleave, asking for documents proving Plaintiff was the proper beneficiary. The affidavit states that Mr. Van Cleave refused. The declaration continues, stating that Plaintiff produced the documents in December 2015 and that on February 6, 2016, Union National tendered a check, which was rejected, and eventually another check was issued.

In support of her argument that Randall has no personal knowledge of post-litigation events, Plaintiff submits Randall's testimony stating that Union National's counsel handled reading the complaint, and that she personally did not read it, but that Union National did read the complaint. After a break, Randall clarified that starting January 2015, "the legal department did the research investigation into this case and the claims department did not really—was not involved." Randall Dep. 115:13-16, ECF No. 378-3. As a Rule 30(b)(6) deponent, Randall then testified that Union National relied on Mr. Brabec's firm to coordinate the investigation into Plaintiff's claim. *Id.* at 115:18-24

While Randall does have personal knowledge as to the fact that she personally requested the check in January 2016, she does not appear to have personal knowledge as to the exchange of letters between Brabec and Van Cleave. Therefore, Paragraph 18 will be struck from the affidavit. Plaintiff's motion is **granted** as to Paragraph 18. As Randall does have personal knowledge as to the issuance of the check, Paragraphs 19 and 20 will not be struck.

Plaintiff cites Randall's testimony that states that she did not know the reason for the delay in the issuance of the second check, as that was handled by counsel. Plaintiff argues that Randall does not have personal knowledge as to the reason for the delay, therefore her affidavit should be struck. The Court agrees. Plaintiff's motion is **granted** and Paragraph 19 is struck to the extent it attempts to offer a reason for the delay in the issuance of the second check.

vii.    Paragraph 21

Finally, Plaintiff argues that the last paragraph of Randall's Declaration should be struck as Randall's statements are "entirely conclusory and self-serving:"

> There was never any intent by Union National or me to pay the wrong person. We did our best under the circumstances to properly verify and pay the correct beneficiary. We believed in good faith that the original beneficiary, Sandra Carter, was the proper beneficiary because the properly indexed records showed that Sandra Carter was the beneficiary. We paid that claim quickly and efficiently. But, obviously, we made a mistake because we should have paid Plaintiff. There was never any ill will toward Plaintiff or any effort to deny her claim. Once we confirmed that we paid the wrong person, we issued another check for policy limits (less the policy loan) plus eight percent (8%) interest, which was five percent (5%) higher than the statutory minimum (i.e., 3% policy interest). Thus, the Policy benefits have been paid twice.

Randall Decl. ¶ 21.

Union National argues that it should be permitted to make such testimony as "Union National's intent is directly at issue in this bad faith case, in which Plaintiff must prove, among other things, that Union National acted with malice, gross negligence, or reckless disregard." Brief Opp. Pl.'s Mot. Strike 19, ECF No. 404.

Union National points out: "[T]here is nothing wrong with self-serving affidavits and declarations, provided they are supported by facts in the record and satisfy the usual requirements for affidavits and declarations. In fact, the parties' affidavits and declarations will usually be self-serving. The self-serving nature of testimony raises a credibility issue for the factfinder, not an

admissibility issue for the court." *Id.* at 19-20 (quoting 11-56 *Moore Federal Practice—Civil* § 56.94); *Spring Street Partners –IV, L.P. v. Lam*, 730 F.3d, 427, 441 n.7 (5th Cir. 2013) (quoting the same section with approval). Whether there are facts in the record to support Randall's statement will be addressed in ruling on the Motions for Summary Judgment. For now, this paragraph will remain.

Union National argues that Plaintiff's arguments overlap with her arguments in her motion for summary judgment. The Court agrees. The Court does agree with Plaintiff, however, that by her own admission, Randall is not qualified to give opinion testimony as to the correct interest rate. Randall's affidavit is struck with respect to what the proper interest payment would be. To that extent, Plaintiff's motion is **granted**. In all other respects, the paragraph stands.

### C.    Declaration of Stacy Huch

Plaintiff's arguments in support of striking Paragraphs 4, 5, and 7 of Huch's Declaration have already been addressed. Therefore, the Court declines to strike these paragraphs. Further, as the Sham Affidavit Rule does not apply to inconsistencies in testimony between two different witnesses, the Court declines to consider Plaintiff's argument that Paragraph 6 should be struck to the extent it conflicts with Hecker's previous testimony.

### C.    Exhibit E

As the Court has permitted Union National to substitute Exhibit E with a correct copy of the policy, the Court finds that Plaintiff's motion is **moot** as to this point.

### D.    Timely Disclosure

Plaintiff argues that several exhibits were not timely disclosed, therefore Union National should not be permitted to use such documents to support its Motion for Summary Judgment. Rule 37(c) of the Federal Rules of Civil Procure states: "If a party fails to provide information . . . as

required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 26(a) requires a party to disclose all documents it will use to support a claim or defense in its initial disclosures. Rule 26(e) requires that a party who has responded to an interrogatory or request for production must supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

The local rules of this district provide: "A party is under the duty to supplement disclosures at appropriate intervals under Fed. R. Civ. P. 26(e) and in no event later than the discovery deadline established by the case management order." L.U. Civ. R. 26(a)(5). Local Uniform Civil Rule 26(b)(1) further provides: "The discovery deadline is that by which all responses to written discovery, including supplementation of responses, required by the Federal Rules of Civil Procedure must be made . . . . Supplementation of disclosures must be concluded by the discovery deadline."

It is uncontested that all of the documents at issue here were disclosed before the discovery deadline, November 1, 2017. *See* Text Only Amended Scheduling Order dated July 5, 2017. They were also disclosed before the Rule 30(b)(6) depositions. Therefore, the Court determines that Union National did not violate Rule 26 by supplementing its disclosures in October, before the discovery deadline. As there has been no discovery violation, the Court need not determine whether there was substantial justification for the nondisclosure or whether the nondisclosure was harmless. The motion is **denied** to the extent it asks the Court to exclude these documents.

Furthermore, Plaintiff's argument that Randall may not testify as to the interest due is **moot** as the Court has already struck her statements for lack of personal knowledge.

### E.     Parole Evidence

Plaintiff argues that Defendant's declarations should be struck to the extent they offer parole evidence to alter the term of the Policy, referring to Union National's alleged attempts to impose "extracontractual requirements that Plaintiff or her counsel were required to provide policy documents to make a claim." Pl.'s Mem. Supp. Mot. Strike 35, ECF No. 379. The parole evidence rule holds that extrinsic evidence is inadmissible in an action for breach of contract to alter the terms of a written contract, unless there is fraud or mutual mistake. *Grenada Auto Co. v. Waldrop*, 195 So. 491, 492 (Miss. 1940). As Union National has offered such evidence to dispute the bad faith claim, which sounds in *tort*, the Court **denies** Plaintiff's request.

### F.     Costs and Attorneys' Fees

The Court finds that Plaintiff's request for attorneys' fees is not warranted. Plaintiff's request is **denied**.

### F.     Summary

For the reasons above, Plaintiff's motion to strike is **denied in part and granted in part**. It is **granted in part** to the extent that it asks the Court to strike Hecker's statements regarding the paper waiver of premium file and Randall's statements regarding the letter exchange between Brabec and Van Cleave, the reason for the delay of the check, and interest to be paid under the Policy on Plaintiff's claims.

**III. UNION NATIONAL'S MOTION FOR SUMMARY JUDGMENT [357] AND PLAINTIFF'S MOTION**

**FOR PARTIAL SUMMARY JUDGMENT [364]**

**A. Standard of Review**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Linsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to

the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 322).

**B. Analysis**

       i.    <u>Breach of Contract</u>

Under Mississippi law, a Plaintiff must prove: "(1) the existence of a valid and binding contract, (2) the defendants has breached the contract, and (3) the plaintiff has been damaged monetarily." *Kelley, LLC v. Corinth Public Utilities Comm'n*, 200 So. 3d 1107, 1123 (Miss. Ct. App. 2016) (citing *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1175 (Miss. Ct. App. 2007)). Union National asserts that Plaintiff's breach of contract claim fails because she has no damages, as Union National paid her $10,398.96 ($10,000 minus $766.71 for the policy loan, plus 8% interest of $1,185.67). Plaintiff argues that there remain genuine disputes of fact as to whether the deduction for the policy loan was proper, what the correct interest amount was, and whether Plaintiff may recover under a second policy. Plaintiff, in her Motion for Partial Summary Judgment argues that she is entitled to summary judgment that Defendant breached its duty to pay her the Policy benefits under Policy AD948400740 and that the issue of benefits and interest due should be submitted to the jury. For the reasons below, Defendant's motion is **granted in part and denied**

**in part** with respect to the breach of contract claim, and Plaintiff's motion is **denied** with respect to the breach of contract claim.

a.   *The Loan Deduction*

As Union National has asserted that it was entitled to set off $766.71 from the Policy proceeds because of an unpaid loan to Daisy Carter, it retains the burden of proof for this affirmative defense. In Randall's Declaration, she states that at her time of death, Ms. Carter owed $766.71 on a loan from Union National. Randall Decl. ¶ 12, ECF No. 375-2. In support, Union National attached a Policy Loan Agreement with Daisy Carter's signature and a check made out to Daisy Carter that states "Loan on Policy" for $210.16. Loan Documents 1-2, ECF No. 357-9. Further, Union National attached screenshots of its check records maintained on its computer system showing that it deducted $766.71 when it paid Sandra Carter and C&J Financial LLC on July 10, 2014. Checks 3-4, ECF No. 357-10. Plaintiff argues that these documents

> do not present credible evidence to support Defendant's allegation that Ms. Carter owed $766.71 at the time of her death. Defendant failed to produce any canceled checks, loan ledger, history or other documents proving that (1) Daisy Carter cashed the alleged check; (2) whether and in what amount any payments were made on the loan; (3) whether or in what amount interest accumulated on the loan, or (4) the effect of Ms. Carter's waiver of premium claim on the alleged loan.

Pl.'s Mem. Opp. Union National's Mot. Summ. J. 10, ECF No. 381. At the outset, the Court notes that it may not weigh the credibility of the evidence at the summary judgment stage as Plaintiff suggests. Union Nationals responds by pointing out that Plaintiff "has failed to respond with competent summary judgment evidence in rebuttal. Instead, plaintiff simply denies that the loan exists. A denial alone cannot defeat summary judgment." Reply Br. Supp. Mot. Summ. J. 4, ECF No. 388. Nevertheless, Plaintiff, as the party <u>without</u> the burden of proof on the claim to recover for the loan, does not have to come forward with evidence to defeat Union National's claim. As Union National has the burden here, it has not put forth sufficient evidence to show that there are

23

no genuine issues of fact as to its entitlement to a set off for a loan against the policy. Union National's motion is **denied** in this respect.

b. *The Interest Amount*

Plaintiff asserts that there is a genuine issue of material fact as to the amount of interest Union National owes Plaintiff. As showing damages is an essential element of Plaintiff's breach of contract claim, she has the burden of proof here. The Policy states:

> Any death benefit that becomes payable under this policy will be paid in one sum, unless we have agreed with you to provide otherwise or the beneficiary elects another Payment Option as provided in Part 9. . . . If payment is not made within 30 days, we will pay interest from the 31st day until the date of payment. The interest rate will be that specified by the laws of the state in which this policy was originally delivered.

Policy at 10, ECF No. 357-20. It is uncontested that Plaintiff has a contractual right to interest on the Policy proceeds, but the parties dispute the rate to which Plaintiff is entitled. Union National paid Plaintiff the proceeds of the Policy in a lump sum. Therefore, the interest rate on the Policy proceeds is "that specified by the laws of the state in which the Policy was originally delivered." *Id.*

As Plaintiff lived in Mississippi at the time the Policy was delivered, Mississippi law determines the interest rate. Mississippi Code Annotated § 83-7-6 provides that interest of proceeds of life insurance "shall be computed from the insured's death until the date of payment" and that the rate shall be the greater of "the rate of interest guaranteed by the policy or at the current rate of interest applicable to death proceeds left on deposit with the insurer under an interest settlement option or at the current rate of interest payable on dividends left on deposit with the insurer."

As noted, the Policy does not specify the rate of interest for a lump sum payment. Furthermore, the Policy does not provide for interest on dividends. The Policy does, however,

provide "the current rate of interest applicable to death proceeds left on deposit with the insurer under an interest settlement option." Part 9 of the Policy, titled Payment Options, provides that the insured or the beneficiary may elect to be paid the proceeds over time. Policy at 12-13. In such cases, the rate of interest is 3%. *Id.* at 13. Therefore, Plaintiff is entitled to 3% interest running from the date of Daisy Carter's death until the date of payment. Union National submits that this results in $570.21 in interest. Union National paid Plaintiff $1,165.67 in interest on June 21, 2016. Plaintiff has failed to show that she is entitled to any more, simply arguing that Union National previously stated in interrogatories that Plaintiff was entitled to 8% interest. As this is a question of law, such is not sufficient to defeat Defendant's motion for summary judgment. Defendant's motion is **granted** as to the question of interest owed.

c.     *The Potential Recovery under a Second Policy*

Plaintiff argues that her breach of contract claim is not moot because she may be entitled to recover under a second policy. Plaintiff originally sued to recover under Policy AD948400740. In her amended complaint, Plaintiff asserts that there is a second policy, Policy 7020526342 under which she is also entitled to recover. Union National argues the two policy numbers represent the same policy and that Plaintiff has not submitted sufficient evidence proving the existence of a second policy to survive summary judgment.

Union National points to Hecker's affidavit which states that when Union National converted its policy administration system to a new system in 2003, all older eleven-digit policy numbers were converted to ten digit policy numbers. Hecker Decl. ¶ 6, ECF No. 375-1. Thus, Daisy Carter's Policy number was converted from AD948400740 to 7020526342. *Id.* at ¶ 3; Randall Decl. ¶ 3, ECF No. 375-2.

In support of her claim, Plaintiff submits a Certification by Union National dated December 11, 2007 which states that Plaintiff is the beneficiary under Policy No. 7020526342. Policy Certification 1, ECF No. 380-45. Plaintiff points out that although it has the same issue date as Policy No. AD94840740, the policy number and the annual premium are different. *Id.* The annual premium on Policy AD94840740 is $333.54. Policy 2, ECF No. 380-27. The Policy specification page shows that the life insurance premium on the life of Daisy Carter was $302.85. *Id.* There are two riders: a Child Rider with an annual premium of $10.75 and an Accidental Death Rider Coverage with an annual premium of $19.94. *Id.* In contrast, the Policy Certification shows the annual premium to be $324.48.

Plaintiff argues that "according to Defendant's testimony, those [riders] are the *only* two things that could change the amount of the annual premium for this level premium policy." Pl.'s Mem. Opp. Union National's Mot. Summ. J. 16, ECF No. 381 (citing Hecker Dep. 91-92, ECF No. 381-2). This is an exaggeration of Hecker's testimony. Hecker testified that Policy AD948400740 was a "level premium policy." Hecker Dep. 91:25. Plaintiff's counsel asked her whether "level premium" meant that the premium does not change. *Id.* at 92:10-11. Hecker then stated: "I would have to look. This premium could change when the accidental death benefit ceases. But as far as the life coverage, it is level." *Id.* at 92:12-16. Plaintiff's counsel then asked:

> Q:    Okay. Thank you. In other words, if an optional coverage is taken away,
>       then whatever separate premium was being charged for that coverage may
>       go away, but the other premium stays the same?
> A:    That's correct.

*Id.* at 92:17-22. Therefore, Hecker testified that the life coverage premium for "level premium policies" do not change, but changes to the riders could affect the price of the total annual premium. She did not specifically state that removing the Accidental Death Rider Coverage and/or the Children Rider Coverage were the *only* way that the overall premium could have changed.

Plaintiff has not come forth with sufficient evidence to survive summary judgment as to her claim that there was a second policy. Even construing the evidence in the light most favorable to her, Plaintiff cannot escape the fact that there is no documentary proof or testimony showing that the differences in policy numbers and variance in policy premiums are the result of there being two separate policies. Therefore, Defendant's motion is **granted** in this respect.

ii.      Bad Faith/Punitive Damages and Attorney's Fees

Both parties argue they are entitled to summary judgment on the bad faith claim. As this is a diversity case, the court must apply Mississippi law. Mississippi courts have recognized that insurers have "a duty 'to perform a prompt and adequate investigation and make a reasonable good faith decision based on that investigation." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627 (5th Cir. 2008) (quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003)). "A bad faith claim 'is an independent tort separable in both law and fact from [a] contract claim . . . ." *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d at 633 (quoting *Harford Underwriters Ins. Co. v. Williams*, 936 So. 3d 888, 895 (Miss. 2006)) (alteration in original). To show bad faith and therefore open an insurer up to punitive damages, Plaintiff must show that Union National delayed paying a claim[4] "(1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Broussard*, 523 F.3d at 628 (quoting *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992)); *see James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65 (2014) (noting that Mississippi recognizes claims for bad faith delay of payment). Both of these are questions of law. *Jenkins v. Ohio Cas. Ins. Co.*, 794

_____

[4] The parties dispute whether Plaintiff ever actually made a claim and whether Union National ever denied such claim. This argument defies logic. By paying Plaintiff the Policy proceeds, Union National implicitly acknowledged that Plaintiff had made a claim to the Policy benefits at some point. As it is uncontested that Union National has already paid Plaintiff's claim, the Court grants summary judgment to Union National to the extent that it argues that Plaintiff's bad faith <u>denial</u> should be dismissed. *Triplett v. Liberty Mut. Ins. Co.*, 2:15-cv-66-KS-MTP, 2015 WL 7775349, at *2 (S.D. Miss. Aug. 13, 2015).

So. 2d 228, 233 (Miss. 2001). Mississippi courts have been "extremely reluctant to allow a claim for punitive damages where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment . . . ." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1099 (Miss. 1996).

Further, Mississippi law requires that a plaintiff must prove "by clear and convincing evidence that the defendant against whom punitive damages are sough acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a). The Court should "examine the entire time period as a unit," *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 633 (5th Cir. 2015), as it must look at "[t]he totality of the circumstances and the aggregate conduct of the defendant." *Id.* (quoting *Hartford Underwriters Ins. Co*, 936 So. 2d at 896).

a.    *Arguable Basis*

The plaintiff carries the burden of showing that the insurer had "no reasonably arguable basis" for delaying or denying a claim. *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 844 (Miss. 1984). "An arguable reason is one in support of which there is some credible evidence [, although t]here may well be evidence to the contrary." *Guy v. Commonwealth Life Ins. Co.*, 894 F.2d 1407, 1411 (5th Cir. 1990) (quoting *Campbell*, 466 So. 2d at 851 (Robertson, J. concurring)). Typically, an honest mistake, negligence, or ordinary oversight is not sufficient. *Caldwell*, 686 So. 2d at 1098.

Union National argues that Plaintiff cannot meet her burden "because its C.A.R. Indexing System did not reflect that any source documents evidencing a policy change existed on microfilm." Brief Supp. Mot. Summ. J. 13, ECF No. 358. Union National also argues that there is an arguable basis "because much of the delay, if not all, was attributable to Plaintiff and her counsel." Brief Supp. Mot. Summ. J. 13, ECF No. 358.

Plaintiff responds that Union National did not have an arguable basis for such delay because the Change of Beneficiary form could have been found on microfilm and on Union National's old policy administration system, because Union National should have looked in Daisy Carter's waiver of premium file, and because Gina Marshall gave Union National proof that the beneficiary had been changed to Plaintiff in June 2014. Plaintiff further argues that she did not have the duty to provide the forms in her possession and that Plaintiff counsel's "failure to cooperate" was not the reason for the delay because Union National's counsel had proof that Plaintiff was the beneficiary before he asked Plaintiff's counsel to supply that document. Finally, Plaintiff submits that she produced the document seven months earlier than Defendant asserts through the course of this litigation.

1.     The Initial Investigation

Daisy Carter died on May 30, 2014. On June 1, 2014, C&J Financial, LLC ("C&J"), a funeral-financing company working with Marshall Funeral Home, transmitted a Life Claim Benefit Verification Request to Union National's Policy Administration Department. Under Union National's policies and procedures, the employee in the Policy Administration Department would input the policy number into the C.A.R. Indexing System, view the available documents, then pull the relevant documents from microfilm. Such documents are "source documents." Union National determines the identity of the beneficiary based on source documents alone. It is uncontested that the form changing the beneficiary on Daisy Carter's life insurance was not indexed.

Plaintiff contests Defendant's assertion that it could not have reasonably found the document showing that Plaintiff was the beneficiary in its initial investigation. Union National submits that both the application and the change of beneficiary form were stored on separate rolls of microfilm. Applications for insurance were organized by year and policy number, while changes

to policies were organized by year, week, and policy number. Only policy changes were indexed, as they could not be found with only the policy number.

Plaintiff argues that Defendant's assertion that policy changes were stored by week and then by policy number is contradicted by Defendant's own testimony. Plaintiff cites deposition testimony where Hecker first stated that applications were stored by year and policy number while policy changes were stored by year, week, and policy number. Plaintiff's counsel showed her the cover of microfilm box that had policy numbers on it. He then asked:

> Q:  So your testimony a moment ago that life policy changes were not
>     stored by policy number and year is incorrect, isn't that true?
> A:  Based on this, that is true.

Hecker Dep. 45:25-46:3, ECF No. 378-2.

Therefore, Hecker did not affirmatively testify that policy changes are stored by year and policy number, but her deposition testimony does show her, as a corporate designee of Union National, fail to correct Plaintiff's counsel's statement that such documents were stored that way. Plaintiff further points out that Hecker acknowledged it would be "easy" to find an unindexed document, but as noted in the Court's analysis ruling on the Motion to Strike, Hecker really testified that it would be easy to find an unindexed document, assuming that they were organized sequentially by policy number. *Id.* at 52:6-18. Plaintiff's counsel is the one who suggested that they were organized that way, and again, Hecker did not refute his assumption. *Id.*

Union National argues that Hecker is an employee in the records department "and is without knowledge concerning how documents are imaged and archived," whereas Stacy Huch is a records supervisor and does have such knowledge.[5] Reply Br. Supp. Mot. Summ. J. 5, ECF No. 388. Plaintiff responds that she had no need to depose Huch when she had binding testimony, as

---

[5] Defendant further notes that Plaintiff cancelled Huch's deposition twice.

Hecker was designated to testify as to "what information Union National contends it needed to have to enable it to locate information related to the subject Union National policy(s) of insurance in its own hard copy and/or microfiche files." Smith's Notice Dep. Union National 30(b)(6) ¶ 20, ECF No. 289. Plaintiff also argues that Huch was able to find the document in about ten (10) minutes when she showed it to Plaintiff's counsel as a part of discovery. Union National responds that she could find it that quickly because she had found it before.

The Court finds that this is not sufficient evidence so that a reasonable juror could conclude that the policy changes were stored by year and policy number, such that it would be "easy" to find an unindexed document. The fact that Hecker did not correct Plaintiff's counsel's misunderstanding of how Union National stores its document is not sufficient to create a genuine dispute of fact. Thus, the Court finds there is no genuine dispute of fact as to the method Union National stored its documents on microfilm.

Thus, only the Application for Insurance, which listed Sandra Carter as the beneficiary showed up in the system. Hecker Decl. ¶¶ 7-8, ECF No. 375-1. Union National's employees submitted affidavits that to their knowledge, there had never been an instance where a source document had not been indexed.[6] *Id.* ¶ 9; Huch Decl. ¶ 6, ECF No. 375-3. Therefore, it appeared to Union National's employees that Sandra Carter was the correct beneficiary as she was the beneficiary listed on the policy application. Hecker Decl. ¶ 14.

To find a document that had not been indexed without the relevant date of the change would require an employee to pull microfilm rolls for years 1994 through 2003. Huch Decl. ¶ 6, ECF No.

---

[6] Plaintiff argues that, as noted, Policy applications are not indexed. Rather, it is undisputed that Policies are not indexed as they are stored by year and Policy number. Nevertheless, it is uncontested that Policies are stored on the C.A.R. Indexing System. There is no genuine dispute of fact here.

375-3. This is 41 rolls of microfilm, containing 7,000 documents. *Id.* This would take four to six weeks of full time scrolling. *Id.*

Plaintiff argues that Union National acted without an arguable basis because it could have found the Change of Beneficiary form on its old system "in about a minute." Union National responds that while there was proof that Plaintiff was the correct beneficiary on the old system, Union National saw no reason to look there because the C.A.R. Indexing System had been so reliable in the past. Plaintiff has not pointed to any instance where the C.A.R. Indexing System failed to have a change document indexed. Therefore, she cannot meet her burden here.

Plaintiff also submits Randall's testimony that a "thorough investigation" would have led to the documents being found and that, by law, Union National was required to do such an investigation. The context of this statement is useful. First, Randall acknowledged that she had advised others that Sandra Carter was the beneficiary in July 2014, after Plaintiff had written a letter to Union National. Plaintiff's counsel asked:

> Q:      Now, that was false, correct?
> A:      It was correct from what I thought at that time, but we later did determine it was false.
> Q:      It's what you thought you knew, but it was false, right?
> A:      We later found that out, yes.
> Q:      You could have found that out at any time with a thorough investigation of all the documents in Union National's files pertaining to this policy, isn't that true?
> A:      Retrospectively, yes. That is true.

Randall Dep. 63:11-25, ECF No. 378-3. Thus, Randall is simply admitting that if they had done a thorough investigation of *all* of the files, they would have found proof that Plaintiff was the correct beneficiary. Her testimony does not establish the legal conclusion that Union National's investigation was not "thorough."

Finally, Plaintiff submits that the Change of Beneficiary form could have been found in Carter's Waiver of Premium File and that Union National should have checked there as a part of a "thorough" investigation.[7] According to Hecker,

> A waiver of premium claim file is kept by the Claims Department and is supposed to contain documents related to a waiver of premium claim only. Union National would not expect to find a change of beneficiary form in an old waiver of premium claim file, so it is not its practice to check such files to confirm a beneficiary.

Hecker Decl. ¶ 10, ECF No. 375-1. It is uncontested that Union National had access to such documents. It is also undisputed that Union National had no reason to think that a Change of Beneficiary form would be found in a Waiver of Premium file. Therefore, the fact that the document was "in the building" at the time the investigation was done does not mean that Union National had no arguable basis for failing to pay Plaintiff the policy proceeds. *Windmon v. Marshall*, 926 So.2d 867, 873 (Miss. 2006) (holding that insurer had an arguable basis for denying coverage based on a negligent investigation). Plaintiff argues that Union National's policies required it to pull the Waiver of Premium file after every death. Plaintiff has not presented any evidence, however, that this policy was in place at the time of the investigation. Randall Dep. 28-30; Hecker Dep. 169:22-23, ECF No. 378-2 (noting that Union National typically did not have written procedures until October 2015). Therefore, the Court finds that the undisputed facts show that Union National had a credible reason to rely on the C.A.R. Indexing System in determining the identity of the beneficiary of the Policy.

---

[7] Plaintiff also points to several documents that were in Union National's possession at the time of the investigation: UNLIC 62, 542, and 545. Plaintiff argues that Union National should have reviewed these documents, as they were in Carter's application file. In support, she submits that Union National produced UNLIC 62 and 542 in response to Plaintiff's request for "all documents maintained in any form comprising or relating to each agency and/or application file." Union National does not maintain agent files; therefore, Plaintiff argues, these documents must have been in Daisy Carter's application file. Nevertheless, Hecker testified several times that such documents were not within Carter's application file. Hecker Dep. 202:16-18, ECF No. 364-2. Rather, she said they were located in the waiver of premium file. *Id.* at 205:10-11. UNLIC 545 was also produced as a document "relating to Daisy Carter's waiver of premium file." Therefore, the analysis for these documents is the same as the Change of Beneficiary form found in the waiver of premium file.

Plaintiff also argues that Union National did not have an arguable reason for believing that Sandra Carter was the beneficiary under the Policy because Union National received proof to the contrary shortly after Daisy Carter's death. On June 2, 2014, Union National's employee in the Policy Administration Department,[8] Dawn Key, emailed Gina Marshall, an employee of Marshall Funeral Home, that Sandra Carter was the beneficiary. Gina Marshall, responded:

> There is a change of beneficiary form bound into the original policy for Daisy Carter. I have attached a copy for your information. It is witnessed by your insurance agent on May 15, 1996 and stamped received on May 20, 1996. The signature of your insured and your insurance agent both match the signatures on the original policy dated April 5, 1994. Please assist us in this discrepancy.

Marshall/Key Emails 1, ECF No. 357-7. The next day, Marshall emailed again, asking Key to "[p]lease reconsider the beneficiary determination." *Id.* at 3. She attached the front page of the Policy ("the Dec Page") and Defendant's endorsement showing the beneficiary was changed. She asked that someone call her. *Id.*

Key then emailed Marshall back, stating, "You will need to submit this with the claim and the claims dept [sic] will determine the beneficiary. Unfortunately it cannot be done by me." *Id.* at 6. As an employee in benefits verification, Key lacked the authority to handle disputes regarding beneficiaries. Hecker Decl. ¶ 18, ECF No. 375-1. Key followed company procedure in doing so. *Id.* She did not image the documents that Marshall sent to her, but it is uncontested that the written policy requiring such documents to be imaged was not put into place until October 2015. While Plaintiff argues that such policies may have informally been in place before that, she presents no proof of such.[9]

---

[8] It is undisputed that the Policy Administration Department verifies benefits when third parties, such as funeral homes, form contracts based on the future assignment of the proceeds of such policies. This department is separate from the Claims Department.

[9] Plaintiff merely submits that Defendant testified that it "does not know" whether these policies were informally in place before they were reduce to writing. Hecker Dep. 171:12-18, ECF No. 378-2.

Marshall then attempted to contact someone in the Claims Department. She dialed an 800 number. Marshall Dep. 17:5-7, ECF No. 364-4. This is the general number for Union National. There is an automated menu to get to claims. *Id.* at 17:15-19. Marshall assumed she spoke with someone in the claims department because she hit the button for "claims." She had no memory of who she spoke with, although she did remember being transferred to a second person. *Id.* at 17:23-25, 18:9-12. No one asked her to send the documents. Hecker's testimony established that when a funeral home such as Marshall Funeral Home verify benefits on a Policy, they can call Union National's claims call center and speak with a call center representative. Hecker Dep. 85:18-23, ECF No. 364-2. The claims call center is a separate department from the Claims Department and the Policy Administration Department. *Id.* at 86:2-3. According to Hecker, no one ever submitted the documents to the Claims Department; therefore, Union National's claims department did not know the dispute existed. Hecker Decl. ¶ 18, ECF No. 375-1. As there is no evidence that the Claims Department received notice of such documents, the Court finds that there was an arguable basis for it to rely on the C.A.R. Indexing System in determining that Sandra Carter was the proper beneficiary.[10]

### 2. Plaintiff's Letter to Ed Konar

On July 19, 2014, Plaintiff sent Ed Konar, Union National's president, a letter stating that she was the beneficiary under the Policy and requested the proceeds. Plaintiff included a copy of her driver's license, her work identification badge, and Daisy Carter's death certificate. She did not include a copy of the form that indicated she was the beneficiary, even though she did have

---

[10] Plaintiff argues that Union National intentionally withheld these emails from her during discovery and that it intentionally concealed Key's identity and that this is evidence of bad faith. Union National submits that its failure to produce these emails is because they were destroyed in the ordinary course of business on August 2, 2014 and that it was unaware that Key had been contacted by Marshall. Plaintiff has submitted no proof showing that Union National engaged in any kind of cover-up. Indeed, the fact that Union National was unaware of this exchange gives further support for the fact that it was acting in good faith.

that document. Union National routinely receives letters where people falsely claim to be a policy of a beneficiary. Randall Decl. ¶ 17, ECF No. 375-2. Because the Change of Beneficiary Form did not appear in the C.A.R Indexing System and Plaintiff did not include the form, Union National advised Plaintiff that Sandra Carter was the beneficiary and that if she had any questions to please contact them. *Id.*

Michelle Randall was the employee who investigated the policy administration and imaging systems for source documents. Randall Decl. ¶ 14, ECF No. 375-2. Randall reviewed the documents on the C.A.R. Indexing System, which took about thirty (30) minutes. Randall Dep. 56:12-14, ECF No. 378-3. She then advised Konar's assistant that Sandra Carter was the beneficiary. Randall Dep. 63:11-13. Konar replied to Plaintiff's letter stating the same and asked if Plaintiff had any questions or concerns to contact him. Randall Decl. ¶ 16. Plaintiff's next contact with Union National was by filing suit on January 13, 2015. *Id.*

In her declaration, Randall stated that if Plaintiff had provided the Change of Beneficiary form, they would have verified her as the beneficiary. *Id.* at ¶ 17. Plaintiff argues that she was not required to provide such document under the Policy and that to require her to do so would be an extra-contractual requirement. That is not at issue here. The fact that Plaintiff did not send a copy of the form is relevant to determine whether Union National had a legitimate reason to believe that Sandra Carter was the beneficiary. While Union National's guidelines state that Union National must request in writing any documents it needs to process a claim by the beneficiary, Randall testified that they did not do so because they did not believe that Plaintiff was the correct beneficiary. Randall Dep. 64:23-65:10. Therefore, the Court finds that Union National had an arguable basis to advise Plaintiff that Sandra Carter was the correct beneficiary.

While, of course, Union National's investigation was not perfect, as their determination of the beneficiary was ultimately wrong, the Court finds that Union National had credible reasons for its belief that Sandra Carter, not Plaintiff, was the beneficiary.

Plaintiff also argues that the loss payment provision in the Policy required Union National to pay Plaintiff's claim by August 24, 2014. The Policy states that benefits will be paid within thirty days of proof of death unless further investigation is required. Policy at 10, ECF No. 357-20. In support, Plaintiff cites *Gates v. State Farm General Insurance Co.*, 740 F. Supp. 1237 (S.D. Miss. 1990). In *Gates*, the Court noted that such provisions must be strictly construed against the drafter, otherwise they would be rendered meaningless. *Id.* at 1240. The Court did note, however, that if the claimant is the reason for the delay of the eventual payment, then the insurer will not be held to the provision. *Id.* To hold otherwise "would make it possible for claimants to intentionally and improperly delay investigation of their claims, thus forcing to choose between making claims decisions without information and violating the terms of their policy." *Id.* at 1241. As Union National had credible reasons to believe Sandra Carter was the beneficiary at this time and Plaintiff did not provide the Change of Beneficiary form, the Court declines to hold Union National to the thirty-day loss payment provision.

### 3. Correspondence between Brabec and Van Cleave

On February 5, 2015, about three weeks after Plaintiff had filed suit, William Brabec, Union National's attorney, wrote a letter to Plaintiff's counsel, Christopher Van Cleave stating:

> It is my understanding that at the time the claim was submitted, Union National's computer system did not indicate a change of beneficiary. In an effort to comply with its continuing duty to reassess the claim of your client in light of new or additional information, I would ask that you provide me with any documents or other information that would support your client's claim under the policy. Once we receive this information, we will be in a better position to reassess you client's claim.

Brabec 2/5/15 Letter 1, ECF No. 380-33. After which, Van Cleave responded via email:

> I am happy to exchange information with you about this case. As a show of good faith, and in line with the insurer's continuing duty of investigation, I ask that you please first provide me with certified copies of Union National's and/or Kemper's hard copy files related to this policy (including underwriting, agency, application, policy, and policy change files), including such files that may be stored in offsite facilities.

Van Cleave 2/6/16 Email 1, ECF No. 380-34. Brabec responded that if Van Cleave had a document showing that the beneficiary was changed, "please provide it to me so that the company can reconsider its position." Brabec's First 2/9/15 Email 1, ECF No. 380-35. Van Cleave then insisted on certified hard copies, stating

> Obviously, it is not Mrs. Smith's job to do Union National's investigation for it; although I do understand what might motivate Union National to seek information in the beneficiary's possession at this juncture, rather than simply review its own hard copy claims files. . . . I will be happy to provide you with all information in my possession upon receipt of those records. What reason would there be for not providing the same, as evidence of a good faith investigation of Union National's own files, at this time?

Van Cleave 2/9/15 Email 1, ECF No. 380-36. Brabec responded that the insurer did not have a duty to turn over its files as a condition of insured's duty to cooperate and stated that otherwise would wait for initial disclosures. Brabec's Second 2/9/15 Email 1, ECF No. 380-37. Van Cleave then stated that he would

> accept a personal affirmation from you, if such is true, that you have personally reviewed all hard copy policy files, including those stored in offsite storage facility(s), and that there is no evidence of a change of beneficiary to Mrs. Smith in any such file. As things currently stand, you have represented that there is no evidence of such change in the company's "computer [and/or electronic] files." Clearly the company's duty to investigate is not, and never has been, limited to investigation of its "computer" or "electronic" files. . . . [I]t appears Defendants never bother to look [in its hard copy files] as part of their "investigation." (Probably) having realized this, Defendants would like nothing better at this point than to have the beneficiary provide them with evidence of the change, so that they can simply assert "honest mistake" and pay the policy proceeds (and hopefully avoid discovery into the content of the hard copy files). The insured is under no

duty to enable the company to thus avoid its duty of investigating the content of its own files, or to delegate that duty to the policy beneficiary.

Van Cleave 2/10/15 Email 1, ECF No. 380-38. Plaintiff argues that this refusal to send Union National the Change of Beneficiary form was justified for several reasons: Plaintiff was not required to do Union National's investigation for it, she was not required by the Policy to produce the document, Union National already had proof that Smith was the beneficiary.

"Under Mississippi law, a delay is not attributable to an insurer where the insured or his counsel refuses to cooperate or provide the necessary information." *James*, 743 F.3d at 75 (citing *Pilate*, 865 So. 2d at 397). Further, this Court has previously noted that Mississippi courts have "made clear that a claimant is not excused from participation and must cooperate to assist in the investigation and resolution of a claim." *Barnes v. Stonebridge Life Ins. Co.*, 624 F. Supp. 2d 574, 581 (S.D. Miss. 2009) (citing *Pilate*, 865 So. 2d at 400). As Union National's counsel specifically asked Plaintiff for any documentation showing that she was the beneficiary and Plaintiff's counsel intentionally refused to do so, Plaintiff and her attorney are responsible for any delay up until they produced that document.[11]

Furthermore, Plaintiff's argument that Union National found proof that Plaintiff was the beneficiary on its microfilm before Mr. Brabec wrote the letter is without merit. In support, Plaintiff submits Union National's interrogatory which stated that Union National employees found the document on microfilm on January 13, 2015. As previously noted in the Court's analysis in ruling on Plaintiff's Motion to Strike, this is an obvious scrivener's error.[12] The only evidence

---

[11] Plaintiff argues that an insurer cannot delegate its duty to investigate to the insured or beneficiary, citing *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 204 (Miss. 2002). Pl.'s Mem. Supp. Mot. Summ. J. 28, ECF No. 365. In *Stewart*, the insurer admitted that it did no investigation before denying the insured's claim and instead attempted to place the burden on the insured. This case is distinguished from *Stewart*, as Union National did an investigation, which incorrectly showed Sandra Carter was the beneficiary. It did not attempt to place the entire burden on Plaintiff.

[12] It is clear that Union National meant to write that it found the document on January 13, 2016, one year later because the interrogatory specifically states the document could not have been found until December 4, 2015 when Plaintiff produced her copy of the document. The fact that Union National repeated this date in several supplemental

39

Plaintiff has in support of the January 13, 2015 date is that Union National produce a Change of Beneficiary form (UNLIC 45) on December 9, 2015. As the Court has noted, this is the document from the Waiver of Premium file, which as noted in the next paragraph, was found February 2015.[13] This is not sufficient evidence to warrant denying summary judgment.

Finally, Plaintiff submits that Union National admitted that a paralegal found the Change of Beneficiary form on February 4, 2015. Union National has so admitted in several of its discovery responses. Union National submits that it was not aware of the significance of the document at that time because it was in the Waiver of Premium file, where such forms should not be located and further that its policies required it to only consider source documents on the C.A.R. Indexing System. While Plaintiff suggests that Union National's attorney was aware of the Change of Beneficiary form's existence when he wrote the February 5, 2015 letter to Van Cleave, there is no evidence of such. Furthermore, Plaintiff has not presented any evidence that Union National had no arguable basis for continuing to rely on its C.A.R Indexing System.

5.      Plaintiff's Production of the Change of Beneficiary Form

Plaintiff argues that she produced the Change of Beneficiary form in the course of litigating this case on April 30, 2015, seven months before her initial disclosure. Plaintiff is referring to the fact that she attached the form as an exhibit in her Response to Kemper Corporation's Motion for Summary Judgment [11-3]. Union National argues that this is "totally misleading" as it was not produced; the Change of Beneficiary form was one out of fifteen exhibits attached to a document responding to Kemper Corporation, which is "a party and entity separate from Union National." Reply Br. Supp. Mot. Summ. J. 9, ECF No. 388. Union National further argues that "[t]here was

interrogatory responses does not change this. As this case has been going on for <u>over three years,</u> even the Court has had trouble keeping track of the dates in ruling on these motions.
[13] See *supra* pages 5-6, for the Court's discussion regarding UNLIC 45 and UNLIC 1364.

no reason for Union National to sift through this voluminous filing for these documents to evaluate the claim, as this filing did not concern Union National." *Id.*

While this may be true, it ignores the fact that both Kemper Corporation and Union National were represented by the same attorneys at that time. In Kemper Corporation's Rebuttal [15], which is signed by Scott Jones, one of Union National's attorneys, it even specifically references that Plaintiff's Exhibits include the change of beneficiary form. Kemper Corp.'s Rebuttal Supp. Mot. Summ. J. 2, ECF No. 15. The Mississippi Supreme Court has stated that "an attorney's knowledge [is] imputable to the client where the rights of third parties were involved." *Bennett v. Hill-Boren, P.C.*, 52 So. 3d 364, 370 (Miss. 2011). Therefore, Plaintiff has raised an issue of fact as to whether the knowledge of Scott Jones of the Change of Beneficiary form constitutes notice to Union National.

In Hecker's deposition, Plaintiff's counsel asked Hecker whether Union National's attorneys informed it of the document. Hecker responded that she did not know and that she personally was not aware of the document. Plaintiff's counsel then asked:

> Q:    If Union National receives a document that's clearly on a Union National form, that's clearly signed by its insured, that's stamped "filed" by Union National, that shows the insured changed the beneficiary to someone else, what else does Union National have to do to honor that beneficiary's claim? Is there really any other investigation that needs to be performed?
>
> A:    We will still do a search for our records to make sure that we have obtained—we have a copy of the form in our records, because a change of beneficiary has to be recorded by the company, and we have to keep a copy of that.

Hecker Dep. 263:9-21, ECF No. 364-2. Hecker then stated that she did not know whether the Policy Administration Department did a search for the Change of Beneficiary form after the above document was filed or whether any investigation was done. *Id.* at 263:22-25; 264:1-2.

Therefore, the Court finds that Plaintiff has raised a fact issue as to whether Union National had a legitimate or arguable basis for delaying its payment during this time period. Under Mississippi law, if the Court "determines as a matter of law that it cannot hold that insurer had legitimate and arguable defensive position, but that evidence constituted disputed facts as to whether such situation existed, then the trial court should submit that issue to the jury." *Reserve Life Ins. Co v. McGee*, 444 So. 2d 803, 809 (Miss. 1987).

6.       Active Investigation and Attempts to Issue Check

On December 4, 2015, plaintiff's initial disclosures included Change of Beneficiary form. According to Union National, this is what allowed it to find the Change of Beneficiary form on January 13, 2016. Therefore, Union National contends, it was actively investigating Plaintiff's claim at this time. An active investigation is a legitimate reason for delay of payment. *James*, 743 F.3d 65, 71 (5th Cir. 2014) (citing *Caldwell*, 686 So. 3d at 1098).

On February 4, 2016, Union National issued a check for $10,398.96, noting that its counterclaim for declaratory judgment was still pending so Plaintiff should be advised there was "a possibility the Court will determine that part of all of the enclosed amount should be returned to Union National." Brabec Letter 2, ECF No. 364-18.  Plaintiff's counsel rejected the check as it did not include attorney's fees, because it was a "qualified tender," and because it did not have her attorney's names on the check.  Van Cleave Email 1, ECF No. 364-20. Here, such conduct is similar to a "pocketbook dispute" that courts have previously recognized as not rising to the level of an independent tort. *See Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 139 (Miss. 1998); *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 634 (5th Cir. 2015).

b.    *Malice/Gross Negligence*

To prove a bad faith claim, Plaintiff must also present evidence of an "intentional wrong, insult, or abuse[, or] such gross negligence as constitutes an intentional tort." *James*, 743 F.3d at 70.  Such conduct must be shown by "clear and convincing evidence." Miss. Code Ann. § 11-1-65. The record contains no evidence that Defendant engaged in the sort of malicious behavior required to satisfy this requirement. Further, "the mere fact that the investigation of a claim is deficient or incompetent is not sufficient to establish malice, gross negligence or reckless disregard of the rights of the insured . . . even when clerical mistakes result in a negligent denial of a claim." *Guy*, 894 F.2d at 1413 (internal citations omitted).

While the Court did note that there is an issue of fact as to whether Union National had an arguable basis to delay paying the claim after April 30, 2015, the fact that the insured lacked an arguable basis does not necessarily mean that punitive damages are justified. *Blue Cross & Blue Shield of Miss., Inc. v. Maas*, 516 So. 2d 495, 497 (Miss. 1987). Rather the Court must look at the totality of the circumstances to determine whether a reasonable juror could conclude that Union National acted with malice or in reckless disregard of Plaintiff's rights. *T.C.B. Constr. Co. v. W.C. Fore Trucking, Inc.*, 134 So. 3d 701, 704 (Miss. 2013). Union National's initial investigation, where it relied on the C.A.R. Indexing System and failed to find documents in the Waiver of Premium file, was not perfect, but it was not reckless to Plaintiff's rights.

Nor is this a truly egregious delay case, such as *United American Insurance Co. v. Merrill* so as to warrant a finding of an intentional tort. In *Merrill*, an insurer delayed paying life insurance proceeds, so the 72-year-old widow had to take out a loan to pay for her husband's funeral. *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 616 (Miss. 2007). She had to take the graveyard shift at Boomtown, a local casino, to pay off the loan. *Id.* Here, Union National promptly paid Sandra

Carter, so Daisy Carter's funeral was held without delay. Further, Plaintiff has acknowledged that if she had received the funds, she would have used them to pay for the Carter's funeral and then given the rest to Carter's granddaughter. While Plaintiff argues that this fact is immaterial, it does affect whether Union National's conduct constituted an intentional wrong.

Furthermore, as Plaintiff had no expectation of receiving any money, this case is distinguished from *Travelers*. In *Travelers*, the insurer delayed payment for eight months in an attempt to bully the insured to accept a meager settlement and when the insurer had notice that the insured had financial troubles.[14] *Travelers Indemn. Co. v. Wetherbee*, 368 So. 2d 239 (Miss. 1984). That is not this case. Therefore, as Plaintiff has not put forth clear and convincing evidence such that a reasonable hypothetical juror could conclude that Union National's actions constituted an intentional tort against her, Defendant's Motion for Summary Judgment is **granted** against Plaintiff as to her bad faith claim.

        iv.      <u>Continuing Bad Faith/Breach of Good Faith and Fair Dealing</u>

Plaintiff has also argued that there is evidence of bad faith in Union National's litigation filings. Plaintiff points to Brabec's letter in February 2015 and Union National's April 2015 Answer denying that Plaintiff was the beneficiary. As it has been established that Union National had an arguable basis to believe that Sandra Carter was the correct beneficiary at this time, the Court finds that this is not evidence of bad faith. Plaintiff also argues that Union National's offer of judgment is evidence of bad faith, but an offer of judgment in excess of policy limits is likely evidence of good faith.

---

[14] Plaintiff asks that the Court consider Union National's Offer of Judgment pursuant to Federal Rule of Civil Procedure 68 as evidence of Union National's bad faith, as it was made and expired prior to any discovery taking place. Union National's offer to settle was in excess of the policy limits. Therefore, the Court declines to consider such as evidence of bad faith.

Plaintiff also points to Defendant's action for a declaration that Union National had properly paid Sandra Carter on December 29, 2015. In one of its interrogatory responses, Union National stated that it relied on UNLIC 45 in drafting its counterclaim. UNLIC 45 is the change of beneficiary form found in the waiver of premium file that shows that Plaintiff was the correct beneficiary. Union National submits that this was before it found the source document in its microfilm on January 13, 2016, and that it could not be sure that Plaintiff was the beneficiary until it found that document. As noted, it was Union National's policy to only rely on source documents. As there was still a dispute as to who the correct beneficiary was, the Court finds that this was not in bad faith.

Further, Plaintiff argues that in filing its amended answer and counterclaim after Union National had found the source document in its microfilm, Union National acted in bad faith. Union National submits that leave was granted to file this document before Union National found the Change of Beneficiary form in its microfilm and that Union National was only permitted to file the specific document it had submitted; therefore, it filed the document. The Court agrees that this does not show bad faith.

Finally, the Court finds there was no bad faith in Union National's alternate claim asking the Court to declare that, if Plaintiff was entitled to the Policy proceeds, then Union National was entitled to a "set off" for the amount it paid to Marshall Funeral Home for Daisy Carter's funeral. It is uncontested that Plaintiff did plan to use the proceeds to pay for Daisy Carter's funeral with Marshall Funeral Home. While Union National could have done a more thorough investigation to discover that Plaintiff had not actually signed the contract with Marshall to assign the proceeds of the Policy, the Court finds that this is not evidence of bad faith.

iii.    Extra-Contractual Damages

While punitive damages are available for "egregious conduct," extra-contractual damages "may be appropriate where the insurer lacks an arguable basis for delaying or denying a claim, but the conduct was not sufficiently egregious to justify the imposition of punitive damages." *Essinger v. Liberty Mur. Fire Ins. Co.*, 534 F.3d 450, 451 (5th Cir. 2008).

Plaintiff argues that under *Veasley*, she is entitled to extracontractual damages for emotional distress, reasonable attorney's fees and court costs, even if punitive damages are not warranted. In *Universal Life Ins. Co. v. Veasley*, the Mississippi Supreme Court stated:

> [I]t is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment. Some anxiety and emotional distress would ordinary follow, especially in the area of life insurance where the loss of a loved one is exacerbated by the attendant financial effects of that loss. Additional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected. It is no more than just that the injured party be compensated for these injuries.

610 So. 3d 290, 295 (Miss. 1992). While Defendants cite *Fulton v. Mississippi Farm Bureau Casualty Insurance Co.*, for the proposition that there must be a "finding of an intentional or malicious act or any act of reckless disregard rising above mere negligence" to warrant extracontractual damages, *Fulton* does not stand for such. 105 So. 3d 284, 289 (Miss. 2012). Rather in *Fulton*, there was no finding of intentional or malicious conduct, yet the jury was permitted to award $10,000 in extracontractual damages. *Id.* at 289-90. Extracontractual damages are warranted when there is no arguable basis for delaying or denying coverage, but the conduct is not sufficiently egregious to warrant punitive damages. *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14-cv-175-KS-MTP, 2015 WL 4915701, at *19 (S.D. Miss. Aug. 18, 2015).

Union National also argues that Plaintiff may not present her claim for emotional distress without expert testimony. Plaintiff supports her claim for emotional distress with her own

testimony that she has "nervousness, stress, insomnia, sleepless nights, [and was] emotionally stressed behind all of this because of what they did me saying I wasn't the beneficiary of the policy." Smith Dep. 76:21-25; 77:1-2, ECF No. 357-19. She further testified that she takes medication for the stress. *Id.* at 78:2-4. Plaintiff did not designate an expert to testify as to her emotional distress.

The Mississippi Supreme Court has noted that it "usually" following the majority approach and requires a plaintiff to prove intentional or malicious conduct to allow recovery for emotional distress without a "demonstrable physical or mental injury." *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1208 (Miss. 2001). Nevertheless, "in another line of cases, we have demonstrated an intent to 'relax' the standard of proof" and allow recovery for emotional distress and mental anguish proximately caused from ordinary negligence, given that the injury was reasonably foreseeable. *Id.* While the Mississippi Supreme Court has applied the more restrictive view in its more recent opinions, it has done so while noting "the cases applying the minority rule have not been overruled." *Id.* at 1209. In *Veasley*, the Court allowed Plaintiff to present her testimony that she suffered emotional distress without an expert testifying. *Veasley*, 610 So. 2d at 295.

If the jury finds that Union National had no arguable basis for delaying Plaintiff's claim after April 30, 2015, then the jury may determine whether extracontractual damages are appropriate. The Court finds that there is a jury question as to whether Plaintiff has experienced emotional distress. As *Veasley* has not been overruled, the Court finds that it is permissible to submit her claim for extracontractual damages to the jury.

Union National also argues that Plaintiff's emotional distress was not foreseeable, as she was only meant to act as an intermediary for the funds. There is no evidence that Union National was aware of this fact when it originally investigated this claim, though. Further, Union National

argues that it was not foreseeable that she would litigate this case so strenuously, given the amount of the policy and that she did not have an expectation of receiving the money. Plaintiff's counsel has requested over $383,050.00 in attorney's fees and $14,722.17 in costs through November 2017. Pl.'s Mot. Summ. J. 32, ECF No. 365. The Court believes that such attorney's fees are not foreseeable as a matter of law,[15] but that the jury should be allowed to determine what attorney's fees would reasonably be foreseeable.

## IV. SMITH'S MOTION FOR PARTIAL SUMMARY JUDGMENT [364]

Defendant has conceded that there is no evidence to support its counterclaim against Plaintiff for its first payment of the life insurance proceeds to Marshall Funeral Home. Br. Opp. Pl.'s Mot. Summ. J. 4 n.3, ECF No. 387. Therefore, Plaintiff's motion is **granted** to the extent that it asks the court to dismiss this claim.

## V. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff's Motion to Strike is **granted in part** and **denied in part**.

IT IS FURTHER ORDERED AND ADJUDGED that Defendant's Motion is **granted** to the extent it requests that the Court dismiss Plaintiff's bad faith claim, claim for "continuing bad faith," and Plaintiff's breach of contract claim as to the issues of interest and recovery under a second policy. To the extent it requests that the Court rule there are no issues of material fact as to: (1) its entitlement to a set off for loan against the Policy, (2) whether Union National had an arguable basis for delaying Plaintiff's claim for the entire period, and (3) Plaintiff's request for extracontractual damages, it is **denied**.

---

[15] It is unforeseeable that this case would continue two years past Union National's tender of policy limits. Therefore, any claim for attorney's fees as extracontractual damages will be limited to February 4, 2016.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion is **granted** to the extent it requests the Court dismiss Defendant's counterclaim. In all other respects, Plaintiff's Motion is **denied**.

SO ORDERED AND ADJUDGED, on this, the <u>22nd</u> day of February, 2018.

<u>/s/ Keith Starrett</u>
KEITH STARRETT
UNITED STATES DISTRICT JUDGE